Bbadfoed, D. J.
Application for discharge of the bankrupt. The question which meets us at the threshold of the case is, the bankrupt having no assets, has he produced the written assent, filed m this court, of a sufficient number and value of his creditors to entitle him to his discharge, notwithstanding the absence of all assets ?
*560 Amount of claims as admitted by the bankrupt against him, as per schedules filed, - $71,584.30
Amount of claims or debts proven before the register, .... 43,984.12
Debts increased by proof of larger amounts than set forth in bankrupt’s schedule, as assumed in the argument on both sides, - - 8,281.39
—-which, added to the aggregate scheduled debts of $71,-584.30, $8,281.39 — $79,865.69—being the total liability as principal debtor of the bankrupt, without regard to the time the debts were contracted.
One-third in value, $79,865.69, - - $26,621.89
The amount of the claims of the creditors, who have assented to the bankrupt’s discharge, $24,667.60, which, deducted from $26,621.89, leaves a deficiency of $1,954.29, - - $26,621.89
'24,667.60
$ 1,954.29
Prior to June, 1874, 50 per cent, of proven claims was necessary for the discharge of the bankrupt without the assent of his creditors, and if the bankrupt had no assets, or not the required amount, he must have had a majority in number and in value of his creditors who had proven their claims.
The law as it then stood was in these words: “Section 5112. In all proceedings in bankruptcy commenced after the first day of January, 1869, no discharge shall be granted to a debtor whose assets shall not be equal to 50 per centum of the claims proved against his estate upon which he shall be liable as the principal debtor, unless the assent, in writing, of a majority in number and value of his creditors to whom he shall have become liable as principal debtor, and who shall have proved their claims, is filed in the case, at or before the time of the hearing of the application for discharge; but this provision shall not apply to those debts from which the bankrupt seeks a discharge which were contracted prior to the first day of January, 1869.”
Section 9 of the act of June 22, 1874, (18 U. S. Statutes, *561 part 3, p. 180,) has the following provision, viz.: “And in case of voluntary bankruptcy no discharge shall be granted to a debtor whose assets shall not be equal to 30 per centum of the claims proven against his estate, upon which he shall be liable as principal debtor, without the assent cf at least one-fourth of his creditors in number and one-third in value; and the provision in section thirty-three in said act of March the second, eighteen hundred and sixty-seven, requiring 50 per centum of such assets, is hereby repealed. ”
In section 21 of the same last-cited act (18 U. S. Statutes, part 3, p. 186) is found this provision, viz.: “That all acts and parts of acts inconsistent with the provisions of this act be and the name are hereby repealed.”
There has been a difference of opinion in the United States courts as to the full effect of this latter law of June 22, 1874, on the law as laid down in both of the U. S. Revised Statutes of 1874 and 1878; some of the judges holding that it effected a full repeal of the law, and let in all creditors, without regard to the time of contracting their debts, to add their claims to the aggregate liability of the bankrupt, and thus create the necessity for him to produce a greater amount of assets than he would otherwise be required to do to obtain his discharge, and also let them in with subsequent creditors to give their assent to the discharge of the bankrupt in case there were no assets, or less than the required amount.
Other judges hold that the act of June 22, 1874, parts of which are above recited, only repealed that part of the former law which required 50 per cent, of assets, in the bankrupt, of the proven debts against him, and a majority in value and number of the creditors who had proven their claims, and substituted in lieu thereof the 30 per cent, of assets, and, in default of that, the one-fourth in number and one-third in value of creditors whose assent was necessary to justify a discharge, without the requisite amount of assets, and that the latter clause in the,two Revised Codes, viz.: “but this provision shall not apply to those debts from which the bankrupt seeks a discharge, which were ccntracted prior to the first *562 day of January, eighteen hundred and sixty-nine,” remained unaffected by the later act of June 22, 1874.
.Of course, in this latter view of the case, all the creditors whose claims were contracted prior to January 1, 1869, were altogether powerless to oppose the discharge of the bankrupt, either by adding their claims to the aggregate of his liabilities, and thus require a greater percentage of assets, or by refusing their assent to his discharge.
In re Gifford, 16 National Bank. Register, September 26, 1876, Justice Withey, district judge of the western district for Michigan, sustains the former proposition, and says: “As the law now stands, we hold that in the absence of consent by creditors in voluntary cases, no matter when commenced, or when debts were contracted, the assets must pay thirty per cent., not fifty per cent., or there can be no discharge; whereas, in compulsory cases, the b 0/32.1x1*11 pt, if otherwise entitled thereto, is entitled to a discharge, irrespective of the assent of creditors or the amount of assets.” He cites the opinion of Judge Lowell as confirming his own, in In re Griffiths, 1 Central Law Journal, 506; and, also, that of Mr. Justice Miller, of the United States supreme court, reported in 1 Central Law Journal, (In re King,) 501.
Judge Drummond, of the United States circuit court, Indiana, In re Wheeler & Riggs, 19 B. R. 259, in a lengthy opinion, has supported this view of the case, and concludes by saying: “But, when we look at the whole scope of the amendment of 1874, and apply the language of the ninth section to the case now before the court, it seems to me that it was the intention of congress to declare by that section that in any case of bankruptcy, when there were no assets equal to thirty per cent;, if the bankrupt secured the assent of one-fourth of his creditors in number, and one-third in value, as there stated, that he was entitled to a discharge, irrespective of the time when tbs debts were incurred; and, therefore, I hold, contrary to the opinion of the district court, that the ninth section of the act of June 22, 1874, necessarily repealed the proviso to the 5112th section of the Revised Statutes, and *563 that in this case, on the facts as conceded, the bankrupts are entitled to their discharge.”
Judge Blatchford has, In re Sheldon, expressed an opinion on this subject, but it was obiter dictum, as the proceedings were all commenced before the twenty-second of June, 1874, and consequently were not governed by that law. Judge Gresham, U. S. district judge for Indiana, has taken the same view of the case as Judge Blatchford.
On the weight of the authorities (as far as I can inform myself) I shall follow Judge Drummond’s opinion, and conclude that the act of June 22, 1874, altogether repealed the provisional clause of 5112 in both of the Revised Statutes, and that, as a necessary result, if there had (in this ease) been any assets to entitle the bankrupt to a discharge, there must have been 30 per cent, of the claims proven against his estate upon which he is liable as a principal debtor, without regard to the time they originated; and if, as in the present case, there are no assets, then it is requisite to have the assent of one-third in value and one-fourth in number of his creditors to assent to his discharge, no matter when the claims of these creditors arose. By this repeal the creditors whose debts were contracted before the first day of January, 1869, whether they have proven their claims or not, are “entitled” to the same status, as to giving or withholding their assent to a discharge of the bankrupt, as all the other creditors.
As the law now stands, after the repeal of the provision aforesaid, the bankrupt has to have 30 per cent, of the proven claims only, and, therefore, creditors who have not proven their claims cannot add them to swell the aggregate of the bankrupt’s liability, but they are, in general terms, without any words of restriction as contained in the repealing act, let in to give or withhold their assent to the bankrupt's discharge where there are no, or not sufficient, assets. The exact words, showing no restriction in the repealing act, are as follows: “Without the assent of at least one-fourth of his creditors in number, and one-third in value.” Thus it will be seen that upon this construction of the law the bankrupt has not the requisite amount in value of creditors assenting to his dis *564 charge to entitle him to it, the deficiency being, as before shown, $1,954.29.
A strong effort has been made by certain creditors to prevent the discharge of the bankrupt. Elaborate specifications have been filed, each one of which has been denied or answered, The grounds for opposing the discharge, without reciting in detail the specifications and answers, are substantially as follows:
First. That the bankrupt has “wilfully sworn falsely” in his affidavit annexed to his original petition and Schedule A thereto, in that he omitted to set forth certain debts of the Wilmington Bolling Mill Company, amounting to $37,500, which he had assumed, and many other debts to the creditors unknown.
As to this specification the court takes leave to say that it considers there is no evidence whatever, in all the transactions brought to its notice, of any wilful false swearing within the meaning of the provisions of the bankrupt act; that the evidence conclusively shows that the indebtedness named in this specification was that of the Wilmington Bolling Mill Company, not that of the bankrupt; as it was proven in the case, and not successfully refuted by the creditors, that the ultimate liability for the payment of this $37,500 depended on the successful prosecution of the rolling mill business, which, for this consideration, had been transferred from the company to the bankrupt.
The last clause of the first specification, in these words, viz., “and many other debts to the creditors unknown,” is faulty by reason of its generality and want of precision.
Second. Specification charges wilful false swearing, in that he did not embody in his Schedule B all his assets and property. On. an examination of the evidence, this court thinks the bankrupt should have returned articles of property which he omitted, but under such circumstances as to negative any idea of wilful false swearing or fraud on the provisions of the bankrupt act. He should have returned his household goods, though it was very natural that a former exemption of the same property under execution by the sheriff, *565 as his wife’s property, should have induced the mistaken belief that they belonged to her. This was a mistake on his part, for the law had not been so altered in favor of married women as to secure these household goods to her, although purchased for her by a relative. So he should have produced whatever choses in action he held, however worthless, at the time he considered them. He should have returned in this Schedule B any real estate standing in his name, no matter to what extent it may have been covered with judgments against him. He should have returned his gold watch, wearing apparel, etc., etc., and have relied on the exemption under the United States and state laws, which are liberal in their provisions. I shall then order the bankrupt’s schedules, in reference to the matters above stated, to be amended so as to comply with the law.
Third. False swearing by the, bankrupt that “he had no books, deeds or papers relating to his business at the time of filing his petition. There may be more stringent requirements made of some bankrupts than of others in the matter of books to be kept by them.”
Considering the wide range of capacity of those entering into and failing in business who are entitled to the benefits of the bankrupt law, it must needs be that there are many very honest men who are not professional book-keepers themselves and have no means to employ them; but as it is an essential feature of the bankrupt law that a free discharge must depend upon a free discovery of assets and delivery of the same to thejassignee, books of accounts, i. e., written evidence of all the credits and liabilities of the business engaged in, must be kept, and the production of some books of account of this nature must be made, to enable the bankrupt to obtain a discharge. The degree of accuracy and particularity required will depend, in a great degree, on the circumstances of each ease. Books which show an honest attempt to throw such light on his business transactions as will make them reasonably plain of themselves, or capable of being made plain by explanation, are sufficient, within the meaning and intention of the bankrupt law.
*566 Now, the books produced in this hearing by the bankrupt have been at the service of the creditors of the Wilmington Eolling Mill Company, or his individual creditors, since the time of his filing his petition in bankruptcy; and in this connection it may be well to give a short statement of the bankrupt’s relations with the company. Finding the business not a remunerative one, they entered into articles of agreement with the bankrupt, the contents of which articles of agreement, proven by parol, (they having been lost,) established these facts: The rolling mill company were, by certain trustees named in the articles of agreement, to deed the whole real and personal estate of the company, fixtures and appurtenances, to the bankrupt, on consideration that he would assume one-half of the indebtedness thereof. In pursuance of this agreement he gave to the trustees of the company his judgment bond for the payment of $37,500, which was duly entered against him; and thereupon he was placed in the possession of the real and personal estate, fixtures, etc., etc., with the distinct understanding and agreement between himself and the trustees of the creditors of the company that if he succeeded in his business, to the extent of paying off the indebtedness of $37,500 entered against him, he was to be entitled to all the profits over and above that sum he could make, and be absolute owner of the real and personal estate conveyed to him; and also that if, after his best efforts to succeed, he should fail in the business undertaken, he should turn over to the company, and the company should accept, all the real estate and personal estate they had sold and possessed him of, and should then satisfy the judgment entered against him.
In point of fact, the creditors took out execution on this judgment, and levied on and sold all the real and personal property they had before transferred to the bankrupt. It is evident to the court that the bankrupt in good faith facilitated the redelivery of all the property put into his hands by the company.
So much as bearing on the question of books: The company had, of course, a set of books kept in the usual manner, and *567 with ordinary accuracy and particularity. Mr. Townsend, succeeding to the business, took up and continued the same books. His final interest in the concern was a contingent one, and, as it proved in the end, the trustees of the company were ultimately interested in their contents.
If we were disposed to be technical we might suggest the query whether these books, in any proper sense, can be called the bankrupt’s books; but we waive that question. The books were, with all other property, credits, etc., turned over to the trustees of the creditors, and, upon a full and searching examination of the bankrupt, in open court, he has cleared up whatever might need explanation.
On this point the court is fully satisfied that the formal objection of not keeping proper books of account has failed.
Specification é. The substance of this specification is the wilful concealment of property. On an examination of the evidence submitted, the court does not think this specification is sustained.
Specification 5. The court does not think that there has been such fraud and negligence in not delivering his property to his assignee, as charged in this specification, as to prevent his discharge, if that deficiency is corrected by obeying the orders of the court to amend his schedule in that behalf, and he is otherwise qualified.
Specification 6. Property wilfully omitted. This specification is answered by the order of this court requiring of the. bankrupt to amend his schedules in that behalf. Under this specification we observe that there was no such wilful omission as should deprive the bankrupt of a discharge, if otherwise entitled to it.
Specification 7. Proper books of account not kept. This specification is already disposed of by the remarks heretofore made.
Specification 8. Is indefinite, uncertain, and faulty in all respects. It does not specify properties or moneys concealed, times, places, or any circumstances, such as demand an answer.
*568 Specification 9. This specification has already been considered.
Specification 10. Alleging that the assent of Williams, one of the creditors of the bankrupt, was of no avail, as he was at the time non compos mentis, was withdrawn.
The bankrupt cannot receive his discharge now. The application will, therefore, be indefinitely continued, to allow him to obtain the requisite number in amount and value of his creditors, and to conform to the order of the court now made that he shall amend his schedules, referring to' his ownership and possession of property, as above indicated, and in order that he may claim the exemption allowed him under the state and United States laws.
The court considers him entitled to a discharge on his compliance with the matters of form made necessary by the acts of congress, and shall so order when they are complied with.