## LUDEY v. PURE OIL CO. et al.

No. 20497. Opinion Filed Sept. 15, 1931.

Rehearing Denied April 19, 1932.

Davidson & Williams, for plaintiff in error.

Alvin Richards and F. A. Calvert, for defendants in error.

RILEY, J. This action was instituted by Charles A. Ludey against the Pure Oil Company, the Ohio Cities Gas Company, the Quaker Oil & Gas Company, the Eagle Gasoline Company, corporations, and Charles G. Tibbens, to recover the value of one-third of casinghead gas taken from the southwest ¼, of section 21, township 18 N., range 12 E., Creek county, Okla., and for accounting and for cancellation of a lease upon said lands.

Judgment was for plaintiff in the sum of $4,494.35. Plaintiff and defendants who constituted the lessees appeal.

Plaintiff alleged, in substance, that:

On June 1, 1911, Kemp and Hayden, the owners of the described land, executed an oil and gas mining lease thereto in favor of Quaker Oil & Gas Company. The said lease provided for a one-eighth oil royalty and $200 per year per well gas royalty where gas was marketed and used off the premises.

On June 19, 1911, Kemp and Hayden conveyed an undivided one-third interest in said land, subject to said lease, to the plaintiff.

The Quaker Oil & Gas Company proceeded to develop said land. There are now 26 wells producing oil and gas. None of the wells produce gas only. All of said wells are oil wells. Cashinghead gas for many years has been produced from said oil wells. The Pure Oil Company, formerly the Ohio Cities Gas Company, has succeeded to all rights and liabilities of the Quaker Oil & Gas Company and the Ohio Cities Gas Company.

The lessee defendants have sold and de-

livered to the Eagle Gasoline Company and Charles G. Tibbens casinghead gas from said wells.

Plaintiff amended his petition so as to seek recovery for dry or residue gas used by defendant lessees in the operation of said lease.

The Pure Oil Company admitted the execution of the lease as pleaded; that it was now the lessee in possession and producing oil and casinghead gas; admitted that Ludey owned a one-third interest in the lands; that there are 19 oil wells on said lease; that all of said wells except one were drilled prior to 1912; that there were no gas wells; that about the year 1915, a market existed for casinghead gas, and on July 22, 1915, the lessee contracted with Tibbens for the sale of casinghead gas at 5c per M. cu. ft.; that a vacuum plant was installed by the defendant lessees to collect said casinghead gas and a large sum of money so expended for installation and maintenance to date; that D. A. Bartlett and F. A. Bartlett, owners of the other two-thirds interest in the land involved, contracted with lessee defendants whereby they agreed to receive two-thirds of one-eighth of the value of the casinghead gas as their royalty, but Ludey refused to join in said contract; that, in June, 1920, the value of the casinghead gas was increased slightly in proportion to quality; that lessee defendants tendered to Ludey checks for his royalty interest in the casinghead gas at the rate of one-third of one-eighth, but Ludey declined; that lessee defendants have sold approximately $40,000 worth of casinghead gas from said lease; that in event it should be held that plaintiff is entitled to recover more than one-third of one-eighth, the statute of limitation, section 185, C. O. S. 1921, be declared a bar to plaintiff's recovery; that plaintiff be estopped by laches from claiming the amount set forth in his petition; that the court determine and allow defendants the production cost.

The lessee defendants denied the sale of dry or residue gas, but admitted the use of same as fuel in operation of said lease. They pleaded custom and knowledge of plaintiff as to this fact at the time he acquired his interest in the land. The defendant lessees plead that: "Casinghead gas for which plaintiff seeks to recover herein was, and is, in fact and in truth, oil," and that plaintiff is entitled to the same rate of royalty upon casinghead gas as provided in his lease for royalty upon oil and no more.

An estoppel was pleaded in that on September 21, 1915, the defendant lessee paid to a bank of Ohio $71.73, the same being one-eighth of the proceeds derived from the sale of casinghead gas from said lease, and one-third of said sum ($71.73) was credited to Ludey, but it was subsequently admitted that Ludey was not bound by said acceptance.

The trial court sustained plaintiff's demurrer to defendants' answer that Ludey was entitled to only one-third of one-eighth of the casinghead gas. The cause proceeded to trial and judgment.

The judgment found that Ludey was entitled to one-third the value of the casinghead gas sold from the Ludey (Big Pond) farm, together with interest at 6 per cent. calculated monthly. That Ludey should pay one-third of the cost of production and marketing of this casinghead gas plus 6 per cent. interest thereon, calculated monthly; that Ludey was entitled to judgment against lessee defendants in the sum of $4,494.35, with interest from July 1, 1928; that Ludey was not entitled to anything for dry gas used in development; that defendants were not entitled to expenses prior to the year 1915; that casinghead gas was not a part of the oil produced from the lease, and therefore not contemplated by the one-eighth royalty clause of the lease. The defendants' plea of limitation and laches was denied. The trial court found that the Pure Oil Company owned a valid and subsisting oil and gas mining lease upon the lands involved, and denied plaintiff's prayer for cancellation of the same. The court found that D. A. Bartlett and F. L. Bartlett, owners of an undivided two-thirds interest in the land, had authorized the sale of their interest in casinghead gas produced from the premises, and that defendants had the right to produce and sell all casinghead gas produced, for it was impossible for defendants to separate the one-third interest owned by plaintiff and no market had been provided by Ludey, nor had he attempted to use it.

The first issue on appeal is:

Does the term oil, as used in the lease here presented, include casinghead gas? Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 Pac. 501 (June 21, 1921); Mussellem v. Magnolia Pet. Co., 107 Okla. 183, 231 Pac. 526 (March 11, 1924); George v. Curtin, 108 Okla. 281, 236 Pac. 876 (April 7, 1925); Mullendore v. Minnehoma Oil Co. (Okla.) 233 Pac. 1051 (Nov. 12, 1924, rehearing granted Feb. 9, 1926); Mullendore v. Minnehoma Oil Co., 114 Okla. 251, 246 Pac. 837 (April 13, 1926); Withington v. Gypsy

Oil Co., 68 Okla. 138, 172 Pac. 634 (April 23, 1918) ; Wolf v. Blackwell Oil & Gas Co., 77 Okla. 81, 186 Pac. 484 (Jan. 6, 1920).

In the Hammett Case this court said, referring to the last two cited cases:

"These cases are the only cases that have been called to our attention where the rights of the parties regarding casinghead gas were in dispute and where no mention was made in the lease concerning the same. We think these cases support the position that gasoline manufactured from casinghead gas is neither oil nor gas within the contemplation of an oil and gas lease which makes no reference to casinghead gas and nothing appears to indicate that the parties have contracted concerning the same."

We answer the query in the negative.

It follows that the casinghead gas produced from the land in controversy belonged to the landowners, because in the lease no mention is made of casinghead.

The Bartletts, cotenants with plaintiff Ludey, agreed that the lessee defendants might sell their interest in such casinghead gas to Tibbens and the Eagle Gasoline Company, and that they would accept the royalty mentioned in the oil royalty clause of the lease as their consideration. Ludey made no demand for delivery to him of his interest in the casinghead gas, and the lessee defendants properly acted when they sold it. The parties lessee and Ludey became as tenants in common:

"A tenancy in common is where two or more hold the same land, with interests accruing under different title, but at different periods, or conferred by words of limitation importing that the grantees are to take in distinct shares." Black's Law Dict. (2nd Ed.) p. 1142.

Before the statute of limitations will start in favor of a tenant in common, there must have been an actual ouster by the one asserting the statute. Beaver v. Wilson, 117 Okla. 68, 245 Pac. 34; Arthur v. Coyne, 32 Okla. 527, 122 Pac. 688; Burt v. Steigleder, 132 Okla. 217, 270 P. 54; Connor v. Thornburgh, 140 Okla. 16, 282 P. 122; Int. Land Co. v. Smith, 103 Okla. 101, 229 Pac. 601; Prairie Oil & Gas Co. v. Allen, 2 Fed. 566, 40 A. L. R. 1389.

There was no total denial by defendants of plaintiff's interest in the casinghead gas. Clark v. Beard, 59 W. Va. 669, 53 S. E. 597; Booten v. Robertson, 199 Ky. 302, 250 S. W. 1000; Summers v. Vinson, 211 Ky. 571, 277 S. W. 849. In the latter case it is held:

"It is not presumed that a joint tenant in possession is wrongfully claiming title against his co-owners, but the converse is true."

So holds Longfellow v. Byrne, 68 Okla. 314, 174 Pac. 745; Hurie v. Quigg, 121 Okla. 80, 247 Pac. 677.

There never was an ouster of Ludey by the defendants or any of them. To the contrary, his right as an owner of the land was recognized; the only contention being that defendants contended Ludey was entitled to one-third of a one-eighth interest in the casinghead gas, whereas he contended he was entitled to a one-third interest. In the absence of a complete denial or ouster, the statute of limitations has no place in an action between cotenants or tenants in common for an accounting of rents and profits. Peets v. Wright, 117 S. C. 409, 109 S. E. 649; Vaughn v. Lankford, 81 S. C. 282, 62 S. E. 316, 128 Am. St. Rep. 912.

There was a trust of fiduciary relation between the parties. The statute of limitations does not begin to run until the termination of that relationship. It has not been terminated. See Rice v. Peters, 113 N. Y. S. 40, wherein it is held:

"A tenant in common receiving the common property, either wrongfully or by consent, holds it as trustee for his cotenant to the extent of the interest of the cotenant, who may compel an accounting." Hatch v. Hatch, 46 Utah, 116, 148 Pac. 1096; Pomeroy's Eq. Jurisprudence, vol. 3, sec. 1044; sec. 1051, R. C. L. vol. 26, 1232-1235; Rollow v. Taylor, 104 Okla. 275, 231 Pac. 224; Baldridge v. Caulk, 110 Okla. 185, 237 Pac. 453; Reed v. Bachman, 123 Am. St. Rep. 996.

A person who has, without lawful right, under one cotenant, taken oil, may be held accountable therefor in equity. Williamson v. Jones, 43 W. Va. 562, 64 Am. St. Rep. 891, 27 S. E. 411, 38 L. R. A. 694.

See Edwards v. Edwards, 108 Okla. 93, 233 Pac. 477.

"Limitations do not affect the right of the cestui que trust so long as the trust relation continues." Carroll v. Carroll, 92 Ark. 625, 121 S. W. 947; Thomas v. Hurst, 73 Fed. 372; Finn v. Wetmore, 212 Ill. App. 550.

We conclude that the statutes of limitations and laches are not applicable to bar plaintiff's claim in the cause at bar. We conclude that plaintiff is entitled to recover one-third of the value of the casinghead gas taken from the land in controversy. The resulting question is, What expense, if any, are the lessee defendants entitled to charge

4

for the production and sale of the plaintiff's interest in the casinghead gas? The plaintiff contends that no expense should be allowed, but admits that the general rule is that:

"A cotenant in the exclusive possession of mining property, who extracts ore, may charge against its proceeds, the reasonable and necessary .expenses of its extraction and marketing."

Plaintiff says that after the Hammett decision, supra (June 21, 1921), the defendants were bound to know of his one-third interest in the casinghead gas, and that their withholding of his interest was malignant and a monstrous injustice. We are not so wrought up about it. The answer is that the courts were open for Ludey to enforce his right. Moreover, we find that defendants' conservation and sale of the casinghead gas was in good faith and most beneficial to plaintiff, otherwise it would have e caped in the air.

This court has held that the measure of damages for taking oil from land through mistake, where the lessee entered into peaceable possession of the premises believing in good faith that the lessor owned the entire title in the premises, is the value of the oil at the surface, less the reasonable cost of production. Barnes v. Winona Oil Co., 83 Okla. 253, 200 P. 985; Zelma Oil Co. v. Nemo Oil Co., 84 Okla. 217, 203 Pac. 203; Menshall v. Berryhill, 83 Okla. 100, 205 Pac. 932.

The trial court in calculation of the allowable expense took what it found to be the entire expenses of operation of the lease, or $199,044.04, as a basis. Then it took the amount derived from oil produced, or $221,-347.64, and added the total of casinghead gas sales, or $43,945.63, to arrive at the sum of $265,293.27, or the total amount received from sale of oil and casinghead gas from October 1, 1915, to July 1, 1928. It then ascertained the ratio the casinghead gas bore to the oil value, and found it to be approximately .1656 per cent., but varying from month to month, a monthly ratio being taken (Ex. "X", C.-M., pp. 747-749), and found that percentage of the total expense, or $199,044.04, to be $36,130.87, which represents the ratio of casinghead gas expense to that of oil based on value of production. That sum was divided by three so as to find the chargaeble expense for plaintiff's one-third interest. The result was $12,043.86. Interest was allowed upon the chargeable casinghead gas expense. The court found Ludey's interest of the casinghead gas amounted to $20,897.56, and gave Ludey judgment for the difference with interest at 6 per cent. from July 1, 1928.

We are not prepared to say that the system of allowing expense was erroneous. Wemple v. Producers Oil Co., 145 La. 1031, 83 So. 232.

Plaintiff, Ludey, is not charged with drilling or capital investment under the trial court's judgment.

Judgment affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents.

---

KORNEGAY, J. (dissenting). I dissent from the conclusions reached by the majority in this case with reference to the rights of the plaintiff in error, Ludey, who is defendant in error in the cross-petition. In the court below, there was sharp conflict between the views held by the attorneys for Mr. Ludey and the views held by the attorneys for the Pure Oil Company. Mr. Ludey insisted through his attorneys that he was entitled to one-third of all casinghead gas, without deduction of any kind for the expense of production. In one breath he claimed that the relation between himself and the lessee was one of trust and confidence under the contract. His recovery, however, as allowed, is on the basis of unintentional tort. On the other hand, the lessee insisted that for the casinghead gas, he was entitled to one-third royalty in accordance with the division stipulated for oil and the customary royalty. During all the time that the controversy was going on between Mr. Ludey and the operating company, the gentlemen who owned the other two-thirds interest in the land were accepting royalties for the casinghead gas converted into gasoline on the basis of the one-eighth, the proportion that was called for in the lease.

The casinghead gas originally was a by-product, little thought of, and little cared for. However, by virtue of the extension of the field and of other fields, instead of allowing it to go to waste as it had been, it was found practical, by combining the small amounts of gas that accumulated in all oil wells, and conducting it to a common reservoir and applying a system of pressure and cooling, to get a valuable product known to the market as casinghead gasoline, which is a little more volatile than the gasoline that, by distillation, is extracted from ordinary

crude oil, the value of which in large measure is determined by its gasoline content.

Under those conditions, the operator undoubtedly, on the principle of natural justice, owed a duty to the owner of the land to save this product as far as possible. The plaintiff, owner of one-third of the land, who bought subject to the lease, had no right to explore for this product by sinking wells, and he had two co-owners whose rights were to be considered also.

In the present case, the oil and gas lease was made before Mr. Ludey bought and was in operation, and at that time a market had not developed for this casinghead gas, and so far as he was concerned, and his predecessor in title was concerned, there was no value to it. At the same time, the contract that was actually made by his predecessor did not require in express terms that the oil operator save this gas, but one would naturally conclude, viewing the relations of the parties, that there would be an implied obligation, on the part of the one who took the risk and spent his means in the development, to save everything that could be saved, and look to the general terms of the lease as a standard for his compensation, measured by human experience and the principles of common right.

This court has, in my judgment, in the present case and some preceding cases, by reason of following a formula that will not fit, gotten itself into a series of quagmires from which it is difficult to find a way out. To reconcile all the cases that have heretofore been decided by this court, and to apply the standard laid down therein, as applied to the case then being decided, as well as other cases later to come up, would be a task that no conscious man would undertake. Take the cases, cited by the majority in this case, and the reason cited for the conclusion in this case, and compare them, and it will be found that they do not measure each with the other, or contain anything in common that one could rely on as a safe and sure measure. We might as well revert to the olden times, when the King's foot was the standard.

The majority in this case adopts a formula, "casinghead gas is not oil." To say it is a liquid and would flow along the ground as distinguished from flowing in the air near the ground, it might be classed as not being oil, but with a slight condensation casinghead gas, charged with oil contents, will soon make gasoline that will flow along the ground, though giving off vapor that will flow in the air above the ground at the same time. To adopt a formula that it is neither oil nor gas, would not help in the solution in the present case, and as applied to another, would not help very much in the solution, for the simple reason that it is largely a mixture and composed of the same thing that oil ordinarily is composed of, and composed of the same thing that natural gas is composed of, though a complete chemical analysis of two samples taken from the well at different times would scarcely show identity. However, we can, with abiding assurance, say that the product, no matter what we call it, is a product of the labor of the man who developed the land of the man who owned the land, and both on principles of natural justice should be considered. Whether we figure its fugacious character, and go into speculation as to whether the oil that was actually produced, or the gas that came up with it, was within the confines of the area of ground owned by the landowner at the time of making the lease, or had developed by virtue of outside pressure, would be immaterial as to the rights of the parties, viewed from a common sense standpoint. Natural justice would dictate that the laborer should have pay for his work, and that the landowner should receive compensation for having furnished the land, out of which the lessee by development secured this mixed matter.

It appears that, in the search for "liquid gold," when the stakes get a little high, the lawyer sometimes loses his sense of proportion, and the court its sense of direction, and when the words "lien claimed" are indorsed on the back of the complaint, that everybody gets excited, though at the same time, if it were a controversy over some corn or oats, arising from the labor of the tenant with the land of the landlord, we would not get very much excited as to whether or not the corn raised was of one variety or another. Take the case of a landlord and an ordinary share cropper, who in the spring agree that the cropper should plant corn of the "Bloody Butcher" variety, and should pay the landlord the usual one-third, and it turned out that the tenant did not or could not get that variety, and planted instead "Boone County White," or "Hickory King," or "Long John," would it require very much legal discrimination to hold that the tenant would be entitled to two-thirds of the crop produced and the landowner one-third? Of course, nobody knows when the development work starts as to whether oil and gas will be found separate or together, but in any event the lease in this case was a lease for oil and gas purposes, carrying with it the

right to extract the oil and gas, which are the ordinary terms for what perhaps the chemist might call the hydro-carbons in the land.

By virtue of applying a formula, fixed and unyielding, just a few weeks back, this court fell into two most inconsistent positions, as it seems to the writer. There was a controversy between two operating companies on a set of facts presented to the court in March, 1931. This court, with only two dissents, gave to the Mid-Continent Petroleum Corporation all of the drip gasoline, amounting to several hundred thousand gallons, that came from some land in a nearby county. One Justice dissented, the writer of this was marked absent, and a decision was rendered in March, 1931. Rehearing was asked and a new opinion prepared. That opinion gave to the Blackwell Oil & Gas Company all of the drip gasoline. The second opinion in the matter was filed in this court on July 7, 1931, the style of the case being Mid-Continent Petroleum Corporation v. Blackwell Oil & Gas Company, decided July 7, 1931 (pending on rehearing), and is reported in the Oklahoma Appellate Court Reporter, vol. 59, page 11. In neither one of the majority opinions is the right of the landowner thought of. The majority opinion in the latter case was prepared by the same Justice who has prepared the majority opinion in the instant case. In that case, it seems to me, that by adopting a formula and trying to classify, the court evidently dropped into the same quagmire that I think the court is in now.

A review of the cases that are cited in the opinion of the majority, as a foundation for the conclusion in this case, that gasoline obtained from gas is not oil, or that casinghead gas producing gasoline does not contain oil, shows that they are not harmonious as amongst themselves, much less with general principles. There are two of the Mullendore Cases that are referred to in the opinion of the majority, the last one of which is the foundation of the opinion of the court below. Evidently the Mullendore Cases were the same case, though one would scarcely recognize it, except that the lawyers were the same in large measure, though in the last case one party brought in reinforcements. The latter one of the cases is found in 114 Okla. 251, 246 Pac. 837. The bedrock of that case is that the man who, for the protection of his landlord and to save something under his contract for both of them, and pursuant to duty, saved it by extra labor, was guilty of conversion. The slightest reference to the law of conversion, as laid down by the text-books, is sufficient to convince anyone who will think, that the foundation of the two Mullendore opinions, namely that of conversion, is scarcely consistent with the right of the producer and the duties owed by the man who had in charge the development of the land for oil and gas, as in this case.

The latter opinion by a member of the court, has the same number, 14061, as the first, which is a commissioner's opinion. One would scarcely recognize from the opinion by Vice Chief Justice Branson that it was the same case that was being reviewed, much less a rehearing. The opinion of the commissioner was filed on the 12th of November, 1924. Rehearing was denied on February 24, 1925. The opinion by the court was filed on April 13, 1926, and rehearing was denied on May 11, 1926. The attorneys as put down the first time for the defendant in error, Oklahoma Petroleum & Gasoline Company, were McGuire & Marshall and W. Hubert Courtney. Mr. C. H. Rosenstein represented the Minnehoma Oil Company. Messrs. Ames, Lowe, Richardson & Cochran were added on behalf of the plaintiffs in error in the last opinion, and there were eleven amici curiae added on the last opinion. After the opinions are reviewed, there does not appear to be very much that would warrant the conclusion of the court in the present case, as I see it.

The latter Mullendore opinion referred to the case of Mussellem v. Magnolia Petroleum Co., 107 Okla. 183, 231 Pac. 526. If that case decides anything, it is based on the theory of a pure conversion, but there are none of the elements of conversion in the present case. However, reverting to the parent case that all seem to refer to, Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 Pac. 501, it appears that the controversy waxed warm and strong. One of the divided forces of the court was headed by Justice McNeill, who succeeded in convincing four other members of the soundness of the logic of his opinion and the force of his argument. However, there was a very strong dissent in that case, fairly well reasoned too, by Justice Kennamer, who succeeded in getting three of the Justices to concur with him. That was a case between an original lessee and some sublessees and it originated over some casinghead gas. The Gypsy Oil Company set up three defenses, the first being that the casinghead gas was not oil, either chemically or physically speaking, but an entirely different thing. Second, that

the casinghead gas is gas and no gasoline was extracted from the oil, but was extracted from the gas. And the third defense was that regardless of the chemical and physical properties, the gasoline was not oil to be delivered in a pipe line within plaintiff's contract, and if it was different from either oil or gas so that it would not pass to the lessee, then it belonged to the fee owner, and the Gypsy Oil Company contracted with the owner regarding the same. The court held that the question was not whether gasoline manufactured from casinghead gas was oil in a technical sense, but whether it was oil in its ordinary and popular sense, and whether it was so understood by the parties to the original oil and gas lease, and provided for a royalty of one-eighth of the oil within the pipe line. Wolf v. Blackwell Oil & Gas Company was cited, and especially Wemple v. Producers Oil Co. (La.) 83 South. 232, and it was stated in the opinion that in that case the landowner brought suit against the lessee, because the lessee was manufacturing gasoline from the casinghead gas, and was paying no royalty, and the landowner was contending that, if it was not oil, it was a mineral, not embraced within the contract and the landowner was the owner. Various extracts are set out from the opinion relied on, rendered by the Louisiana court, about construing contracts, and evidently this court, in the case of Hammett Oil Co. v. Gypsy Oil Co., did not notice this feature in the Louisiana case:

"We conclude, then, plaintiff is entitled to recover upon a basis of an allowance of one-eighth interest in the casinghead gasoline produced."

The language of the court later on in the Hammett Case is that the court, which it was relying on, held that this was a reasonable royalty. It will thus be seen that the very foundation of everything Justice McNeill might have said, as to whether or not this was oil or gas, in getting his deduction from this Louisiana case, was swept from under the doctrine by the actual judgment of the Louisiana case, because, in the case quoted from and relied on, the court applied the equitable rule of giving the landlord one-eighth and the lessee seven-eighths.

Justice Kennamer dissented and he cited a case from the federal authority after discussing what the majority had said. At page 243 of 95 Okla., he used the following language:

"In the case of Genet v. Delaware & Hudson Canal Co., 163 N. Y. 173, 19 L. R. A. 127, note, we read:

" 'The tendency of courts to do justice between the parties to a contract by an equitable, rather than a technical, construction of its provisions, even to the extent of completing the agreement by implied provisions, is exceptionally well illustrated in the above case, in which the rules governing such implications are clearly expressed.'

"Elliott on Contracts, sec. 1521, announces the rule as follows:

" 'It will not be construed so as to render it oppressive or inequitable as to either party, or so as to place one of the parties at the mercy of the other, unless it is clear that such was the manifest intention at the time the agreement was made.' "

He quotes from the case of Twin-Hills Gasoline Co. v. Bradford Oil Corp., 264 Fed. 440, in an endeavor to establish the fact that casinghead gas is a component part of oil. In that case the court gave to the landlord only one-eighth of the casinghead gas.

The case of Mussellem v. Magnolia Petroleum Co., 107 Okla. 183, 231 Pac. 526, is cited, but will not help along much towards the conclusions reached, if analyzed. The case referred to was a case in which the opinion was prepared by Justice Branson. The plaintiffs evidently were the landlords in that case, and the lease was silent on the subject of casinghead gas and the landowner asked for one-eighth, but the court held that there was a third clause in the lease that would reach casinghead gas, and cites a Kansas case, and holds that the third clause in the lease cut off the one-eighth idea, and that for years the parties themselves had so interpreted the contract. The court concluded that the $50 per year provision in the lease was the standard of the rights of the parties. The Hammett Oil Co. v. Gypsy Oil Co. case was cited therein, but the court said it had no bearing.

The case of Wolf v. Blackwell Oil & Gas Co., 77 Okla. 81, 186 Pac. 484, is a decision prepared by Justice Owen. In that case, notwithstanding that there was a clause to pay $100 for each gas well a year, nevertheless when gasoline was extracted from this gas the lessor received one-tenth of the gasoline. The latter part of the discussion is as follows:

"Nothing appears in the record to even indicate that the parties contemplated the production of gasoline, and section 958 of chapter 12 of the statute, supra, provides that, however broad may be the terms of a contract, it extends only to those things concerning which it appears the parties intended to contract. It might be said that the term

'other minerals,' following the word 'oil,' includes gasoline oil. But it is unnecessary for us to determine that, for the reason it appears from the petition that lessors received one-tenth of the value of the gasoline oil produced. The controversy is as to one-tenth of the gas produced from the well from which the gasoline oil came. The judgment of the trial court is therefore affirmed."

The opinion in George v. Curtain, 108 Okla. 281, 236 P. 876, comes nearer being decisive as bearing out the contention here than any of them, but it is not reasoned, it merely follows copy, and follows the Mullendore v. Minnehoma Oil Co. case decided November 12, 1924, and bases the case on Hammett Oil Co. v. Gypsy Oil Co., above referred to.

To attempt to reconcile these various opinions would be a fruitless task. Under the circumstances, it seems to me that we should apply the rule of common right to this case. Had a landlord rented his place to a tenant for one-third of the product, and it had turned out that the variety of the corn that was contracted for could not be had by the tenant, but he got some other corn and planted it and produced a crop, scarcely no one would contend that, because the variety of corn was not what the landlord expected, in any wise would the landlord's share be varied, or would he get it all because the product raised was different from what he thought at the time of making the crop.

In the present case, neither party would know what would be found. It was largely a venture based largely on the skill, perseverance, and financial risk of the lessee. The product found partook of the nature of both oil and gas, it being what is classed as a hydro-carbon. To apply a different rule because the stakes are larger, and a different rule every time, as would be indicated by the various rulings, is strongly indicative of the fact that the word "oil," ordinarily a lubricant, which spread on the water makes for easy sailing, in a great many cases has been a ruffling agent.

Perhaps the best rule in following cases would be not to follow them at all blindly, but follow the scriptures, holding fast to that which is good and rejecting that which is bad, after diligent search. That is the rule of ordinary every-day life, and applying those rules to this case, it would be manifestly unjust that the plaintiff below should have all the casinghead gas, when we are bound to know that the casinghead gas is composed largely of the same material as ordinary crude oil, and its production and

preservation in the present case was the result of the enterprise, financial risk, and labor of the lessee.

There appears in the record in this case the regulations of the Secretary of the Interior, found on page 75, and casinghead gas is defined there as used in the regulations:

"Casinghead Gas: The gas from an oil well coming thru the casing with the oil from oil-producing strata."

And casinghead gasoline is defined as follows:

"Casinghead Gasoline: The petroleum product obtained from casinghead gas."

The case of Locke v. Russell, decided by the Supreme Court of West Virginia, reported in 84 S. E. 948, is fairly in point, and discusses in some measure facts here pertinent. In fact, the rules of equity and a large part of the doctrines of the common law are but basic principles of common right.

Regardless of the technical finding as to whether the product in this case is either oil or gas or both or neither, I think that the court has laid too much stress upon the definition as made by itself, and it has forgotten the rights of the parties in its search after a man-made formula, and I therefore register this dissent, believing as I do that the rights of those who developed the property and made it valuable by this decision are being violated.

Note.—See under (1) R. C. L. Perm. Supp. p. 4587. (2) 7 R. C. L. 853.