## FLANAGAN v. CAMPBELL.

No. 27623.   Nov. 1, 1938.

N. E. McNeill and E M. Gallaher, for plaintiff in error.

Monnet & Savage, for defendant in error.

CORN, J. For convenience the parties will be referred to herein in the order of their appearance in the trial court, which was converse to the order of their appearance on appeal.

J. O. Campbell brought an action in the common pleas court of Tulsa county, alleging in his petition that on November 28, 1924, he became the owner of 7/16 of the mineral rights under the Maxwell farm, subject to an oil and gas lease which provided for the delivery of ⅛ of the oil as royalty to the pipe line company. That since that time J. P. Flanagan has been receiving the entire ⅛ royalty, and that on April 4, 1932, the plaintiff Campbell demanded his pro rata share of the royalty payments, which demand was refused, and the plaintiff prayed for an accounting covering the entire period aforesaid.

The defendant Flanagan answered, alleging that the lease provided for the ⅛ royalty oil to be delivered to the lessor's credit to the pipe line company, and that the same was delivered under and by virtue of division order executed by the predecessors in the title of Flanagan and Campbell; that on January 6, 1922, Gracie Pappan, the person to whom the ⅛ royalty oil was to be delivered under the terms of the lease, and her assignee, the National Bank of

Commerce, by written transfer order, sold, transferred, and assigned to the defendant all of the ⅛ royalty oil, as and when produced, and that the defendant since said date had been receiving the possession of said oil under said written transfer order and assignment, and in open and peaceful possession of said oil, asserting title to, the oil as run, and selling the same under claim of title, and that all amounts received by him for the sale of said oil prior to three years before the filing of the petition were barred by the statutes of limitation. The action was commenced on March 2, 1935, and the only proceeds from the sale of oil involved in the judgment on this appeal is that sold by Flanagan and the proceeds received by him therefrom from December, 1924, to December 13, 1931, or more than three years prior to the commencement of this action; and it was stipulated that the total amount paid for the royalty oil between these dates was $2,452.27, and that $327.25 of said amount was paid to B E. Capps on a division order from Flanagan to Capps. The trial court directed a verdict for the sum of $1,072.82 against Flanagan, the same being 7/16 of the above sum, and rendered judgment against Flanagan for said amount.

On consideration of the briefs of counsel it appears that many of the propositions discussed are merely incidental to the controlling question involved in the case. That a conveyance of land upon which there is a valid oil and gas lease conveys to the grantee the royalty reserved to the lessor under the lease is not questioned. Kimbley v. Luckey, 72 Okla. 217. 179 P. 928. Nor that the oil, when delivered to the pipe line company, was personal property. Clark v. Slick Oil Co., 88 Okla. 55, 211 P. 496; Probst v. Bearman, 76 Okla. 71, 183 P. 886. Nor is it disputed that the division order and transfer orders constitute an assignment and transfer of the title to the oil and are binding upon the parties thereto. Amerada Petroleum Corp. v. Melton, 139 Okla. 119, 281 P. 591.; Texas Company v. Petitt, 107 Okla. 243, 220 P. 956, 231 P. 463.

The fact that plaintiff's grantor apparently owned 7/16 of the mineral rights in the land, and conveyed all her right, title, and interest in and to the land to the plaintiff, is beside the real question involved in this case. The defendant pleads the statute of limitations as a bar to the plaintiff's claim, and from the facts and circumstances shown by the record we conclude that the statute of limitations applies to the case and that the plaintiff's claim is barred. The plaintiff contends that the statute of limitations does not start to run in favor of one tenant in common against another until there has been a complete denial or ouster of the other tenant in common's rights and claims; in other words, the possession and control by one tenant in common of the property is presumed to be friendly and for the benefit of both and will not be considered adverse so as to start the running of the statute of limitations until the adverse tenant in common has in some way notified the other tenant in common of his adverse claim. The foregoing is a fair statement of the law. Ludey v. Pure Oil Co., 157 Okla. 1, 11 P.2d 102; Beaver v. Wilson, 117 Okla. 68, 245 P. 34. As to whether such relationship existed in this case is unnecessary to determine herein. But the question here for determination is whether the defendant asserted a claim adverse to the plaintiff and whether the plaintiff had. knowledge of such adverse claim. The plaintiff testified that the defendant did not at any time give him notice of his adverse claim to the royalty oil in question, but his failure to give such notice is not alone sufficient to establish a lack of knowledge of such adverse claim on the part of the plaintiff. The actions of the parties speak more convincingly than words of the adverse claim of the defendant on the one hand and knowledge thereof of the plaintiff on the other.

At the time the plaintiff purchased the land there were producing oil wells upon it, and the plaintiff had full knowledge of that fact, and, as we have already stated, the defendant was receiving all of the royalty payments from the pipe line company under an assignment from plaintiff's grantor. The plaintiff did not question the defendant's right to the oil for eight years after purchasing the land, but after the lapse of this long period of time the plaintiff notified the pipe line company that he claimed a 7/16 interest in said royalty oil. The plaintiff then brought an action to quiet his title to the 7/16 of the ⅛ royalty aforesaid, and the defendant answered setting out his claim to all the royalty oil under and by virtue of the mineral deed to ½ of all mineral rights in the land and the deed to 1/16 of the royalty above mentioned, and alleging that he and his grantor both understood at the time that the two instruments conveyed to him the entire ⅛ royalty which said grantor reserved in the oil and gas lease under which the oil was produced, and that it was a mistake on

the part of the conveyancer that the latter instrument did not designate the remaining ½ of the mineral rights in the land, but instead a 1/16, which he deemed sufficient to convey the remaining ½ of the ⅛ royalty to the defendant, and prayed for a reformation of the deed so as to convey all the remaining ½ of the mineral rights as intended by the parties. In that action the court rendered judgment against the defendant and for the plaintiff, and no appeal from said judgment was taken and it became final. But this shows that the defendant was claiming adversely from and after the date of said deed, which was two years prior to the deed by which the plaintiff acquired title to the land. The defendant offered to show by his testimony and that of Gracie Pappan, the grantor in said mineral deeds, that he bought and paid for all the mineral rights in the land and that it was the purpose and intent of the said Gracie Pappan to convey to the defendant in the latter deed the remaining ½ of the mineral rights in the land, but the trial court rejected and excluded this testimony. Nevertheless, there can be no question about the adverse claim of the defendant to the oil in question, for the reason that he had an assignment to it, which was not questioned by the plaintiff for a period of eight years after he acquired title to the land, and the facts and circumstances in the case will admit of no other inference than that the plaintiff knew that the defendant was claiming exclusive right and title to the oil. We are of the opinion that the foregoing constitutes a complete denial and ouster of the plaintiff and that the statute of limitations is applicable and operates as a bar to the plaintiff's claim to the 7/16 of the royalty oil up to December 13, 1931, when the plaintiff notified the pipe line company of his claim and when the pipe line company stopped the payments to the defendant.

In the case of Ludey v. Pure Oil Co., 157 Okla. 1, 11 P 2d 102, it was held that the statute of limitations and laches was not applicable to that case, but it is pointed out in the opinion that there never was an ouster of Ludey by the defendants, but on the contrary his right as an owner of the land was recognized. In the instant case we are not dealing with a question of title to the land or to the mineral estate therein, but solely with the right of the plaintiff to an accounting and recovery for royalty oil produced from the premises during the time the defendant was claiming title to the same adversely to the plaintiff. In

fact, the plaintiff not only recognized the defendant's title to the oil, but did not question it until in 1931, after an attorney examined the title and advised him of the defect in the defendant's title to the 7/16 interest which the defendant believed he acquired in the second deed from Gracie Pappan. Under such circumstances, the fiduciary relation ordinarily existing between tenants in common did not at the time exist between the plaintiff and defendant, and the statute of limitations was not tolled by the existence of such relation between the parties.

The foregoing facts appearing in the record, we are of the opinion, and therefore hold, that the trial court committed reversible error in directing the verdict in favor of the plaintiff and against the defendant. The judgment of the trial court is reversed and the cause remanded, with directions that the same be dismissed.

OSBORN, C. J., BAYLESS, V C. J., and GIBSON and HURST, JJ., concur.