1997 OK 74

**Karl L. GOODALL, Plaintiff–Appellee,**

v.

**TRIGG DRILLING COMPANY, INC., Defendant–Appellant.**

No. 83195.

Supreme Court of Oklahoma.

June 10, 1997.

As Corrected Sept. 22, 1997.

Rehearing Denied Sept. 26, 1997.

Gary Peterson, Oklahoma City, and Kevin L. Miller, Stipe, Gossett, Stipe, Harper, McCune & Parks, Oklahoma City, for Defendant–Appellant.

Gretchen L. Roddy, B.W. Dabney, HAYS & DABNEY, Chickasha, for Plaintiff–Appellee.

Gregg R. Renegar, Tom M. Moore, Kornfeld, Franklin, Renegar & Randall, Oklahoma City, and Robin Stead, Donald F. Heath, Jr., Stead & Heath, P.C., Oklahoma City, Amici Curiae, for the National Association of Royalty Owners and the Oklahoma Chapter of the National Association of Royalty Owners.

Frank D. Spiegelberg, Christopher K. Woosley, Boesche, McDermott & Eskridge and Brenton B. Moore, Tulsa, Amici Curiae, for Oklahoma, Mid–Continent Oil & Gas Association.

Frederic Dorwart, J. Michael Medina, Tulsa, Amici Curiae Attorneys for Oklahoma Independent Petroleum Association.

PER CURIAM.

¶ 1 Karl L. Goodall claims an overriding royalty interest in a well formerly operated by Trigg Drilling Company, Inc. The well has been shut in. Goodall sues for an accounting and his share of the production. Trigg challenges Goodall's claim to ownership of the interest, and urges that in any event Goodall's suit is barred by limitations.

¶ 2 The primary questions to be settled here are whether, the operator, Trigg, had a duty to inform the royalty owner, Goodall, of production, and, if so, whether Trigg's failure to inform Goodall tolled the statute of limitations. We find that neither party is entitled to summary judgment at this time because there are disputed issues of material fact.

¶ 3 Goodall, a geologist, took as a fee for his services a number of overriding royalty interests in many different wells in Oklahoma. Goodall alleges that he owns an overriding royalty interest in a well in which Trigg was the operator. Goodall was listed as an owner of an overriding royalty interest in the initial title opinion, but his name was omitted in a supplemental opinion obtained in 1977. A fact question exists, therefore, as to whether Goodall was the owner of a mineral interest at the time of production. Goodall states by affidavit that he is the owner of this interest, and never conveyed it to another party. Although the well began producing in 1978 and ceased production in 1983, Goodall also avers that he had no knowledge of production until November 16, 1992. Neither party disputes that Goodall was never paid any royalties.

¶ 4 The first well drilled on this property was a dry hole. Trigg asserts that in an unrecorded agreement between Goodall and another party, Goodall relinquished his overriding royalty interest in consideration for the company's agreement to drill another well. The attorney who rendered the supplemental title opinion stated that Goodall relinquished all rights to the well in 1977.

¶ 5 Goodall filed suit, seeking an accounting and recovery of his portion of proceeds from the second well. Goodall also alleged a breach of fiduciary duty owed to him by Trigg and sought punitive damages. The trial court found that there were no disputed facts, and granted summary judgment for Goodall. It found that Goodall owned 1/32 of 8/8 overriding royalty interest in the well,

and that the amount owing in royalties and interest was $128,490.97.

¶ 6 The Court of Civil Appeals reversed the trial court, holding that the statute of limitations had run on Goodall's claim. The Court of Civil Appeals reasoned that Trigg was not a fiduciary, and thus the statute of limitations was not tolled until Goodall knew of the operator's failure to pay proceeds to him. Because of its holding that the action was time-barred, the Court of Civil Appeals directed that judgment be entered in favor of Trigg. We granted certiorari on July 17, 1995. On appeal, several entities have filed *amicus curiae* briefs.[1]

¶ 7 There are two determinative issues in this appeal. First, did Goodall still own a mineral interest at the time of production, thereby imposing on Trigg a duty to notify Goodall of the fact of production? Second, did Goodall learn of the production by other means? If Goodall relinquished his interest in the minerals before production, then Trigg had no duty to notify him of production. Assuming that some form of notice was Goodall's due, if Goodall knew or should have known of production in time to sue within the statute of limitations, Trigg's failure to inform him that there had been production did not toll the statute. But if Goodall did own an interest in the minerals, and notice was due him which he did not receive and did not learn of production until shortly before he sued Trigg in 1992, then the statute of limitations was tolled because of Trigg's failure to inform Goodall of production. We do not by these remarks, however, intend to limit the parties in the issues they present to the trier of fact upon remand.

¶ 8 The well began producing in 1978. Trigg claims, and Goodall denies, that Goodall knew the well was producing in 1978, but failed to bring suit until 1992. Goodall claims that he did not know the well was producing until 1992, and that he brought suit shortly after he received notice of its production. Trigg states that even if Goodall had no knowledge of the well's production until 1992, his action is time-barred because

the limitations period was not tolled. Goodall contradicts Trigg's assertion by stating that he and Trigg were in a fiduciary or trust-like relationship, and thus the limitations period was tolled until the trust was repudiated in 1992.

¶ 9 Clearly, if there is no tolling of the statute of limitations, the suit is time-barred whether the applicable statute of limitations is five years (for a written contract, 12 O.S. 1991 § 95 First) or some lesser time. Relying on *Becker v. State ex rel. Dept. Of Public Welfare*, 312 P.2d 935 (Okla.1957), Goodall asserts that if there is a fiduciary relationship the limitation period does not begin to run until the beneficiary receives notice of the trustee's repudiation of the trust, be it express or constructive. *See also Jones v. Jones*, 459 P.2d 603, 604 (Okla.1969); *Ludey v. Pure Oil Co.* 157 Okla. 1, 11 P.2d 102, 104 (1931) (fiduciary relationship between lessee and interest owner in gas wells prevented statute of limitations from running until the termination of the trust or relationship). The statute of limitations issue thus hinges on the nature of the relationship between the owner of a royalty interest like Goodall and the operator of a well like Trigg.

¶ 10 During the period at issue in this case, Oklahoma recognized the existence of certain duties owed by well operators to royalty owners. For example, an operator was required, under title 52, section 540, to pay "[t]he proceeds derived from the sale of oil or gas production from any oil or gas well.... to persons legally entitled thereto." 52 O.S. 1981 § 540(A); *see also* 52 O.S.Supp.1995 § 570.10(A)(An operator is required to "hold revenue or proceeds for the benefit of owners legally entitled thereto."). Further, operators were liable for lack of payments to the legal royalty owners as a result of failing to act diligently in determining these owners. *Olansen v. Texaco Inc.*, 587 P.2d 976 (Okla. 1978). These duties have been continued and even extended through current legislation. *See* 52 O.S.Supp.1995 §§ 570.4(C)& 570.10(A).

---

1. Oklahoma Independent Petroleum Association, Oklahoma Mid–Continent Oil and Gas Association, National Association of Royalty Owners and the Oklahoma Chapter of the National Association of Royalty Owners have filed briefs as *amicus curiae*.

¶ 11 As noted, the operator has a duty to pay proceeds from the sale of oil or gas to the legal owner, 52 O.S.1981 § 540(A); 52 O.S.Supp.1995 § 570.10, and to act diligently in determining the legal owners. *Olansen*, 587 P.2d at 976. Further, an operator is liable for mispayments caused by its failure to act diligently in determining the legal owner. *Id.*; *see also* 52 O.S.Supp.1995 § 570.4(C). We hold that under Oklahoma law, a controversy of a material fact as to whether Goodall's action was barred by the statute of limitations existed.

¶ 12 There is a material dispute as to whether Goodall was in fact an owner of an overriding royalty interest. Goodall claims that he neither conveyed nor relinquished his interest in the well. The record contains conflicting inferences concerning Goodall's ownership. If Goodall owned an overriding royalty interest in the well, and if it was of record so as to place Trigg on notice of its existence, or Trigg had actual notice of Goodall's ownership, there is a question if Trigg may have had a duty to inform Goodall of production.

¶ 13 There is also a material dispute as to when Goodall became aware of production from the well and thus knew Trigg owed him money. Trigg claims that Goodall learned about production in 1978. Goodall, however, claims that he did not learn of production until 1992. Thus, neither party is entitled to summary judgment here. Summary judgment is only proper when the record shows that there is no issue of material fact, and that one party is entitled to judgment as a matter of law. *Meadows v. Fain*, 776 P.2d 1270, 1272 (Okla.1989); *Flanders v. Crane*, 693 P.2d 602 (Okla.1984).

¶ 14 We make no observation as to whether Trigg is liable under its duty to account. That is a determination which must be made by the trier of fact upon consideration of the evidence. Finally, of course, Trigg cannot be charged with breach of any duty if Goodall's interest was unknown to him and was not of record so as to impose upon Trigg the duty to account for Goodall's share of production.

¶ 15 Because we find that summary judgment was inappropriate, we reverse the judgment of the District Court. The opinion of the Court of Appeals is vacated. This matter is remanded for proceedings consistent with the opinion.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT JUDGMENT REVERSED AND REMANDED.

HODGES, SIMMS, HARGRAVE, OPALA, WILSON, and WATT, JJ., concur.

KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, J., concur in result.

SUMMERS, Vice Chief Justice, Concurring in result.

¶ 1 This well had been shut in years before plaintiff Goodall first made demand for his share of the royalty. Obviously he is out of time unless something tolled the running of the statute of limitations. Goodall claims the fiduciary nature of the operator—royalty owner relationship tolls limitations until the operator repudiates the "trust" by refusing demand, and that he had made no such demand. Defendant Trigg Drilling Company says an operator is not a fiduciary to a royalty owner, that his duty is only to act as a reasonably prudent operator, and that the statute of limitations has long since run. The trial court gave summary judgment for owner Goodall. The Court of Civil Appeals reversed and ruled in favor of operator Trigg.

¶ 2 It is true that there are at least two unresolved factual issues in the case: (1) Does Goodall in fact own an overriding interest as he claims? And (2) when did he learn of the well's production? But I submit that the second question is only material if something delays the running of limitations so as to make meaningful the date Goodall learned of the well's production. Absent that something, limitations was running all the time, and his suit was brought too late.

¶ 3 The "something" Goodall and the *amicus* brief writers for royalty owners claim, is a fiduciary or trust-like relationship between the two parties. After all, oil and gas cases spanning decades use that lan-

guage. *Young v. West Edmond Hunton Lime Unit,* 275 P.2d 304 (Okla.1954) (unit operator stands in a position similar to that of a trustee); *Rees v. Briscoe,* 315 P.2d 758 (Okla.1957) (fiduciary relationship created); *Ludey v. Pure Oil Co.,* 157 Okla. 1, 11 P.2d 102, 104 (1931) (fiduciary relationship between lessee and interest owner); *Hivick v. Urschel,* 171 Okla. 17, 40 P.2d 1077 (1935) (fiduciary duty between assignor and assignee of oil and gas lease); *Probst v. Hughes,* 143 Okla. 11, 286 P. 875, 877 (1930) (fiduciary duty owed to overriding interest holders); *Leck v. Continental Oil Co.,* 800 P.2d 224, 228–229 (Okla.1990) (fiduciary between operator and interest owners); *Olansen v. Texaco Inc.,* 587 P.2d 976, 985 (Okla.1978) (fiduciary between operator and interest owners).

¶ 4  Not so, say Trigg Drilling and the *amicus* brief writers in support of operators. They argue the operator has his own business interests (and those of his investors) at stake, and he cannot be relegated to the servient sole of mere trustee. The "fiduciary" language in the cases, they say, is mostly dictum, and they cite *Bunger v. Rogers,* 188 Okla. 620, 112 P.2d 361 (1941) and *Howell Petroleum Corp. v. Samson Resources Co.* 903 F.2d 778 (10th Cir.1990) to say the relationship is not really fiduciary, but must arise out of the lease contract.

¶ 5  This case gave the Court an opportunity to provide some useful guidance on the nature of the operator—royalty interest owner relationship: Is it fiduciary? Is it purely statutory? Is it lease/contract—based? Or is it something else? The opinion doesn't say much more than that summary judgment was premature. I would write to resolve the issue.

¶ 6  The late Professor Kuntz, in discussing the lessee's duty of good faith in exercising its pooling power, said this:

> Although it has been said that the lessee has a fiduciary obligation in the exercise of the pooling power, it is submitted that the lessee is not a fiduciary and that standards applied to fiduciaries are entirely too strict. This is so because the lessee has not undertaken to manage and develop the property for the sole benefit of the lessor. The lessee has substantial interests that must be taken into account and should not be required to subordinate the lessee's own interests entirely to the interests of the lessor. Since the lessee's interests frequently conflict with those of the lessor, however, the lessee must exercise the power in fairness and in good faith, taking into account the interests of both the lessor and lessee. (Citations deleted)

*Kuntz, The Law of Oil and Gas, Section 48.3.*

¶ 7  I agree with Professor Kuntz. But, on the other hand, can an operator market a known royalty owner's oil or gas, hold the owner's proceeds until the five year statute at 12 O.S. § 95(1) has run, and then plead limitations when the interest owner asks for his or her money? Surely not. Yet we don't have a "discovery rule" for breach of contract. Something would have to toll the statute. A true fiduciary relationship would do that, but it would also impose too onerous a burden on the operator.

¶ 8  While Oklahoma case law has not enunciated the exact nature of the special relationship between a royalty owner and an operator, nearly all cases have agreed that a special relationship exists. *Young,* supra; *Rees,* supra; *Hivick, supra; et al.* The relationship has been defined as one "similar to a trustee." *Young,* at 309. Clearly, the operator has superior knowledge of the production of the well, which may not be readily available to the royalty owners. The operator has a statutory duty to hold the revenue for the benefit of the legal owners. Tit. 52 O.S.Supp.1995 Section 570.10. Such a duty includes the notification of royalty owners of their financial benefits, and the methods by which the proceeds may be paid. § 579.10(B)(3)(c). While an operator may maximize its own business profits, it should not be allowed to do so to the detriment of the royalty owners who have bestowed confidence and trust in the business integrity of the operator.

¶ 9  Rather than as a true fiduciary relationship, I would describe the relationship between an operator and royalty interest owner as quasi-fiduciary. As explained in *Colonial Imports Inc. v. Carlton Northwest Inc.,* 121 Wash.2d 726, 853 P.2d 913 (1993), a

quasi-fiduciary relationship is created "when a special relationship of trust and confidence has been developed between the parties, where one party is relying upon the superior specialized knowledge and experience of the other, where a [party] has knowledge of a material fact not easily discoverable by the [other party], and where there exists a statutory duty to disclose." *Id.* 853 P.2d at 917; *see also Miller v. U.S. Bank of Washington,* 72 Wash.App. 416, 865 P.2d 536 (1994). *Unlike in a true fiduciary relationship, a quasi-fiduciary is not forbidden from personal dealings, nor forbidden from maximizing profits for both parties;* rather, the duty is dependent upon the facts and circumstances of each case. *See Jones v. Ellis,* 551 So.2d 396 (Ala.1989). Quasi-fiduciary relationships have been recognized in the insurer-insured relationship, in the corporate director-shareholder relationship, and the corporate officer-shareholder relationship. *See Lira v. Shelter Ins. Co.,* 913 P.2d 514 (Colo.1996); *Jones, supra.*

¶ 10  If Goodall owns an overriding royalty interest in this well, and if it is of record so as to place Trigg on notice of his interest, I would hold that there was a quasi-fiduciary relationship between Goodall and Trigg Drilling. *See Young, supra; Rees, supra; West Edmond, supra.* Thus we are back to the primary question—is Goodall's claim barred by limitations, or is the statute tolled as in pure fiduciary cases?  In *Becker v. State ex rel Dept. of Public Welfare,* 312 P.2d 935, 942 (Okla.1957) we recognized that the statute of limitations begins to run when a trustee repudiates the trust and such fact is brought to the knowledge of the beneficiary. It seems to me that a trust-like, or quasi-fiduciary relationship should be governed by the same reasoning with regard to limitations as a true fiduciary situation. The "beneficiary" is generally not in a position to know there has been a breach of duty until he realizes he is not getting his due. *See Levine v. Advest,* 1996 WL 409323 (Conn.Super.1996) (a quasi-fiduciary relationship was sufficient to toll the statute of limitation); *Ludey v. Pure Oil,* 11 P.2d at 104.

¶ 11  Does this mean that a royalty owner can know a well is producing, know the operator is not honoring his royalty interest, and nevertheless wait an indeterminate time before making demand and thus postpone the date of "repudiation" and commencement of the limitations period?  It does not.  When an owner in that situation knows or should know of production, and knows that within a reasonable time after production has begun that he is not getting his share from the operator, knowledge of the operator's "repudiation" should be imputed to him, and the statute of limitations controlling an action for breach of a trust-like duty will begin.  12 O.S.1991 § 95(3).[1]  So, under this theory is either party entitled to summary judgment here?

¶ 12  There is a dispute as to when Goodall became aware of production from the well and thus knew that he had money coming.  Trigg Drilling asserts that he knew of the well's production in 1978.  Goodall contradicts this by claiming that he did not know of the well's production until 1992.  Summary judgment is proper only when the record shows that there is no issue of material fact, and that one party is entitled to judgment as a matter of law.  *Meadows v. Fain,* 776 P.2d 1270, 1272 (Okla.1989); *Flanders v. Crane,* 693 P.2d 602 (Okla.1984).  This disputed fact is material to the statute of limitations defense.

¶ 13  There is also a material dispute as to another critical fact: whether Goodall is in fact an owner of this overriding royalty interest.  Goodall asserts that he never conveyed or relinquished his interest in the well.  Trigg Drilling asserts that his interest was relinquished by way of an unrecorded agreement.  This controversy alone should preclude summary judgment.

¶ 14  Finally, of course, Trigg cannot be charged with breach of any trust-like duty if Goodall's interest was not of record so as to impose upon Trigg the duty to account for Goodall's share of production.

---

1.  The availability of a remedy based in quasi-trust would not preclude a remedy in contract based on breach of the instrument by which the royalty interest was created.  For limitations see 12 O.S.1991 § 95(1).

¶ 15   Were I writing for the Court I would say that there is not, nor has there ever been, a true fiduciary duty between operator and royalty or interest owner. Professor Kuntz was correct.   But the concept of a trust-like, or quasi-fiduciary duty is not new in this state, and has been the law probably since *Probst* in 1930, *Ludey* in 1931, and *Hivick* in 1935, and certainly since *Young v. West Edmond* in 1954.   For statutes of limitations purposes I would impose upon the parties the respective burdens I have set out herein.   And I would consider the writing to be more a clarification of existing law than a change.

¶ 16   But I do not write in dissent.   The Court correctly finds neither party entitled to summary judgment and remands.   Perhaps the court below can figure out whether Goodall's statute of limitations was tolled.