OSCN Found Document:KRUG v. HELMERICH & PAYNE, INC.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KRUG v. HELMERICH & PAYNE, INC.
2015 OK 74
Case Number: 113092
Decided: 11/03/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 74, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

H.B. KRUG, KATHRYN KRUG, and BOBBIE RUTH EUBANKS, on behalf of themselves and on behalf of a class of similarly situated owners, Plaintiffs/Appellants,
v.
HELMERICH & PAYNE, INC., a Delaware corporation, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY

Honorable Jefferson D. Sellers, Trial Judge

¶0 This is the latest appeal in a litany of litigation concerning natural gas wells operated in western Oklahoma from 1978 to 1998. Class representatives, royalty owner plaintiffs/appellants Krugs and Eubanks, are seeking prejudgment interest from the defendant/appellee, Helmerich & Payne, after a jury awarded damages for breach of drilling leases. The trial court denied prejudgment interest and the royalty owners appealed. We hold that: 1) review of the issue of prejudgment interest is not precluded by the settled-law-of-the-case doctrine; 2) the Production Revenue Standards Act, 52 O.S. 2011 §570 et seq., is inapplicable to the facts presented; and 3) because the plaintiff's claims were unliquidated, prejudgment interest is not recoverable pursuant to 23 O.S. 2011 §6.

TRIAL COURT AFFIRMED.

Terry J. Barker, Joseph C. Woltz, Robert. N. Lawrence, Tulsa, Oklahoma, and Allan DeVore, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.
Tammy D. Barrett, Richard B. Noulles, Bradley W. Welsh, Tulsa, Oklahoma, and Eric Fischer, Denver, Colorado, for Defendant/Appellee.

KAUGER, J.:

¶1 This cause concerns another appeal in a litany of litigation regarding natural gas wells operated from 1978 to 1998 in Beckham County, Oklahoma.[1] The previous appeal was Krug v. Helmerich & Payne, Inc., 2013 OK 104, 320 P.3d 1012, wherein this Court affirmed a jury verdict for damages for failure to produce natural gas/drainage in the amount of $3,650,000, but reversed two other jury awards in the amount of $4,055,000.00 and $6,845,000.00.

¶2 We now address the issues of whether: 1) the settled-law-of-the-case doctrine precludes review of the issue of prejudgment interest; 2) the royalty owners' share of the proceeds was subject to the Production Revenue Standards Act, 52 O.S. 2011 §570 et seq.[2] (the Act); and 3) prejudgment interest may be awarded pursuant to 23 O.S. 2011 §6.[3] We hold that the settled-law-of-the-case doctrine does not preclude determination of the issue of prejudgement interest. We also determine that the royalty owners are not entitled to prejudgment interest pursuant to either the Act or 23 O.S. 2011 §6.

FACTS

¶3 The facts preceding this cause are extensively detailed in Krug v. Helmerich & Payne, Inc., 2013 OK 104, 320 P.3d 1012. The plaintiff/appellants, H.B. Krug, Kathryn Krug, and Bobbie Ruth Eubanks (collectively the royalty owners/Krugs), represent a class of oil and gas royalty owners. The class consists of mineral owners underlying two 640-acre sections of land in Beckham County, Oklahoma. The royalty owners leased the two sections to the defendant/appellees, Helmerich & Payne, Inc., (H&P), which operated natural gas wells on those sections from 1978 to 1998, when H&P sold its interests to a third party.

¶4 On December 22, 1998, the royalty owners brought a class action lawsuit against H&P seeking actual and punitive damages in the district court in Tulsa County, Oklahoma. The claims related to payment for uncompensated drainage of natural gas which they alleged occurred from January 1, 1982, until December 31, 1989. The royalty owners alleged that H&P: 1) breached its duties to them to act as a reasonably prudent operator; 2) received payment for uncompensated drainage from a settlement it secured from another pipeline (ANR Pipeline); 3) concealed the settlement when the royalty owners were entitled to a share of the settlement; and 4) engaged in fraud resulting in unjust enrichment. Eventually, the cause went to trial and the jury, in alternative claims returned its verdict in favor of the royalty owners. The jury awarded: $3,650,000.00 for breach of the implied duty to prevent uncompensated damages; $4,055,000.00 for breach of fiduciary duty for failure to prevent uncompensated damages; and $6,845,000 for constructive fraud in the pipeline settlement. It also found that H&P had been unjustly enriched.

¶5 The trial court added additional damages for disgorgement of profits and set the total amount awarded to the royalty owners as $119,522,750. The court also awarded interest on $6,845,000 from November 21, 2008, and interest on the remaining $112,677,750 from January 8, 2009, until paid in full. The trial court also awarded the royalty owners costs and attorney fees. H&P filed an appeal on February 27, 2009, which culminated in our opinion in Krug v. Helmerich & Payne, Inc., 2013 OK 104, 320 P.3d 1012 (Krug 1).

¶6 In Krug 1, this Court reversed in part and remanded to the district court for further proceedings. We affirmed the jury's verdict of $3,650,000 in damages based on the implied covenant to protect against drainage which was based on the lease agreement. However, we reversed the $4,055,000 verdict and the judgment for $119,522,750, determining that the royalty owners were not entitled to pursue a claim for constructive fraud/unjust enrichment when they had an adequate remedy at law ---- breach of contract. Finally, we directed the trial court to revisit its order of costs, interests, and attorney fees in a manner consistent with our opinion. We said that "[i]f the court finds that prejudgment interest is due pursuant to a judgment for a breach of the implied duty in an oil and gas lease to protect against drainage, the court is directed to determine and award the appropriate interest rate or rates."

¶7 Accordingly, on June 24, 2014, the trial court held a hearing concerning the prejudgment interest, attorneys' fees, and costs. Subsequently, on July 2, 2014, the trial court filed an order determining that the Production Revenue Standards Act (the Act), 52 O.S. 2011 §570.01 et seq. was inapplicable to this cause, and that the royalty owners were not entitled to attorneys' fees, costs, or expenses under it. The trial court also held that because the plaintiffs' claims were unliquidated, they were not entitled to prejudgment interest pursuant to 23 O.S. 2011 §6.[4] We retained the cause on April 29, 2014, and it was assigned on April 30, 2015, after the briefing cycle was completed.

I.

THE SETTLED-LAW-OF-THE-CASE DOCTRINE DOES NOT
PRECLUDE RESOLUTION OF THE ISSUE OF PREJUDGMENT
INTEREST UNDER THE FACTS OF THIS CAUSE.

¶8 H&P argues that because the trial court denied prejudgment interest in a 2008 order,[5] the issue cannot be revisited now, even though this Court in Krug 1, reversed the $4,055,000 verdict and the judgment for $119,522,750, and directed the trial court to revisit its order of costs, interests, and attorney fees in a manner consistent with the reversal. Krug 1 also directed the trial court to determine and award the appropriate interest rate or rates, if the court found that prejudgment interest was due. The royalty owners contend that the trial court was expressly instructed to address the issue of prejudgment interest on remand, and that H&P's argument based on the settled-law-of-the-case doctrine is without merit under the circumstances of this cause. We agree.

¶9 The settled-law-of-the-case doctrine bars from relitigation issues finally determined by an appellate court in the review process or those that the aggrieved party has failed to raise in the course of the appellate contest.[6] The doctrine embodies a judicial economy notion designed to prevent rehashing of issues in successive appeals.[7] However, the law-of-the-case doctrine is merely a presumption, whose strength varies with the circumstances.[8] The rule is a flexible one which allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of judicial efficiency, not restraint of judicial power.[9]

¶10 Here the cause was reversed and remanded by this Court with directions to proceed in accordance with our decision and the trial court did so. It would be incongruous and inconsistent to now preclude review of the trial court's denial of prejudgment interest based upon the interlocutory ruling in 2008. No appellate court has ruled on the issue of prejudgment interest in this cause. Additionally, we reversed substantial verdicts in Krug 1, and we expressly directed the trial court to re-consider the prejudgment issue. Accordingly, we determine that the settled-law-of-the-case doctrine is inapplicable under the circumstances of this cause.

II.

THE PRODUCTION REVENUE STANDARDS ACT, 52 O.S. 2011 §570 et 
seq., IS INAPPLICABLE UNDER THE FACTS PRESENTED.

¶11 The royalty owners argue that when H&P received a settlement payment from ANR Pipeline, H&P was obligated to pay a royalty share to them, pursuant to the Act. They also contend that: 1) when H&P failed to pay such royalties, the proceeds began to accrue interest under the Act as well; and 2) the Act was intended to discourage producers from wrongfully withholding proceeds attributable to royalty owners and that requiring prejudgment interest on such proceeds would comport with the Act's intent. H&P insists such prejudgment interest on the proceeds is not due because neither the Act nor its predecessor applies to claims which are premised drainage rather than actual oil and gas production. It also contends that a jury award for drainage is not an award of "royalty proceeds" under the Act.

¶12 Legislative intent controls statutory interpretation.[10] The intent is ascertained from the whole act based on its general purpose and objective.[11] In construing statutes, relevant provisions must be considered together whenever possible to give full force and effect to each.[12] To ascertain intent, we look to the language of the pertinent statute.[13] We presume that the Legislature intends what it expresses.[14] Except when a contrary intention plainly appears, terms are given their plain and ordinary meaning.[15]

¶13 The Act regulates the marketing, sale, and production of hydrocarbons from Oklahoma wells.[16] It generally applies to all owners and all producing wells in Oklahoma with certain exceptions.[17] It sets forth the operator's duties and its duties regarding proceed sharing/royalty disbursement requirements.[18]

¶14 The Act defines "royalty proceeds" as the share of proceeds or other revenue derived from or attributable to any production of oil and gas that may be attributed to any royalty share, but excludes payments of bonus, delay rentals, shut-in royalties or any royalty payable to the Commissioners of Land office or other governmental entity.[19] When royalty proceeds are not paid within the time constraints outlined in the Act, interest begins to accrue and is compounded annually.[20] Should a violation of the Act occur, recovery for damages, interest, court costs, and attorneys' fees and other expenses is to be sought in the district courts.[21]

¶15 Undoubtedly, had drainage not occurred and had H&P actually produced the natural gas but neglected to make royalty payments, rather than sue ANR, the Act would apply. The question now is whether the recovery of a settlement from ANR fits within the definition of "proceeds or other revenue derived from or attributable to any production of oil and gas."[22]

¶16 This Court first discussed the genesis and intent of the Act in Seal v. Corporation Com'n, 1986 OK 34,¶8, 725 P.2d 278. Seal involved constitutional challenge of the Act in effect at that time and the rules created by the Corporation Commission thereunder. The Court noted that:

¶8. . .The Act which became effective immediately is expressly intended to address the protection of 'the rights and correlative rights of all interest owners of natural gas wells and wells producing casing head gas and to afford all such owners an equal opportunity to extract their fair share of gas and to sell and be paid in proportion to their interest therein.' The Act is further expressly intended 'to protect such owners against discrimination in purchases in favor of one owner as against another.'[23]

The Court also noted the history and problems of the gas industry in the State of Oklahoma leading up to the passage of the Act, including: 1) discriminatory practices; 2) burdensome contractual obligations which were ignored; and 3) deferral of payments under industry employed gas balancing contracts.

¶17 Three years later, in Hull v. Sun Refining and Marketing Co., 1989 OK 168, ¶9, 789 P.2d 1272, in addressing whether a division order was a necessary prerequisite to being legally entitled to payment under the Act, the Court also noted that another purpose of the Act was to avoid needless litigation arising from suspended payments. Prejudgment interest under the Act should not be characterized as a penalty but, rather, an integral part of a contractual claim.[24]

¶18 Regardless, in Goodall v. Trigg Drilling Co., Inc., 1997 OK 74, ¶¶10-11, 944 P.2d 292, a case involving whether an operator had a duty to inform the royalty owner of production, we recognized that an integral part of the contract also includes a well operator's duty to hold revenue or proceeds from the sale of production for the benefit of the legal owners. We also noted that operators are liable for failing properly to pay royalty owners as a result of their own omission or errors.

¶19 In Roye Realty & Developing, Inc. v. Watson, 1996 OK 93, ¶32, 2 P.3d 320, the Court addressed whether royalty owners were entitled to proceeds from producer settled take or pay litigation pursuant to their leases. We discussed the definitions of the words "produced," "royalty," and "sold." Although the Roye case is not controlling here because of its distinguishable facts, the discussion is nonetheless precedent. We said:

¶32 It is apparent from the lease language that the Watsons are entitled to royalties on gas produced and sold or used off the leased premises, or gas produced saved and sold from the premises. In Walden v. Potts, 194 Okla. 453, 152 P.2d 923 (1944), this Court defined the word "produced" as it is used in the habendum clause ("so long as oil and gas is produced in paying quantities") to mean not only discovery of the product, but also extracting it from the ground. In Wood v. TXO Production Corp., 854 P.2d 880, 881 (Okla. 1992), we determined that gas is "sold" when it enters the purchaser's line. [2 P.3d 329] Furthermore, this Court has held that "royalty" is the interest in production where a property is under lease for oil and gas. Hays v. Phoenix Mutual Life Ins. Co., 391 P.2d 214 (Okla. 1964).

¶20 The Legislature in clear and unambiguous terms required timely payment when revenue was derived from or attributable to any production of natural gas. The obvious overriding purpose of the Act is to ensure that royalty owners are timely paid their share of the proceeds. The Legislature has followed a path of strengthening mineral owners rights since the Act's inception.[25] Prejudgment interest is accruable in the event such payment is not timely made. Here, H&P leased the property, but never extracted it from the ground. The natural gas drainage was never produced by H&P and/or sold or used by H&P pursuant to the contract ---- the lease.

¶21 While this precise scenario may not have been contemplated by the Legislature, the plain and ordinary terms of the Act apply to production with no indication that the Legislature intended the Act to also apply to uncompensated drainage. If the Legislature chooses to change the language of the statute, it may do so. However, we hold that the Act's prejudgment interest provisions are inapplicable to this cause.

III.

PREJUDGMENT INTEREST IS NOT RECOVERABLE FOR UNLIQUIDATED DAMAGES.

¶22 The royalty owner's alternatively argue that even if they are not entitled to prejudgment interest under the Act, they should be allowed to recover it pursuant to 23 O.S. 2011 §6. Section 6 provides:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

H&P insists that because the damages were unliquidated, they are not recoverable. We agree.

¶23 Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.[26] It is an element of the total liability adjudicated.[27] However, it is well settled that: 1) recovery of prejudgment interest must be predicated on statute;[28] 2) 23 O.S. 2011 §6 is the governing statute governing to prejudgement interest;[29] and 3) prejudgment interest pursuant to §6 will not be allowed unless the amount of recovery is liquidated or capable of ascertainment by calculation or resort to well-established market values.[30]

¶24 Liquidated damages are generally defined as an amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches.[31] Unliquidated damages, on the other hand are damages that cannot be determined by a fixed formula and must be established by a judge or jury.[32] Where the amount due is unliquidated and not certain until rendition of judgment by the trial court, interest does not begin to run until rendition of judgment.[33]

¶25 In the present case, the royalty owners' recovery of damages from uncompensated drainage was not for a sum certain or a sum capable of being made certain by calculation or by reference to some fixed standards set forth in the oil and gas lease. Rather, the claim required that a jury determine, from conflicting evidence and experts' opinions, the estimated amount of loss of production from the wells in controversy and the consequent damages therefrom. Therefore, the award of interest on such damages is not within the contemplation of §6 and the Court may not judicially create an allowance of prejudgement interest when the Legislature has not seen fit to do so.[34] Accordingly the royalty owners are not entitled to an award for prejudgement interest under 23 O.S. 2011 §6.[35]

CONCLUSION

¶26 The settled-law-of-the-case doctrine bars from relitigation issues finally determined by an appellate court in the review process.[36] The doctrine embodies a judicial economy notion designed to prevent rehashing of issues in successive appeals.[37] However, the doctrine is a flexible one.[38] This cause was reversed and remanded by this Court with directions to the trial court to expressly re-consider the prejudgment issue. It would be incongruous to now preclude review of trial court's denial of prejudgment interest. Accordingly, the doctrine is inapplicable under the facts of this case.

¶27 The Act defines "royalty proceeds" as the share of proceeds or other revenue derived from or attributable to any production of oil and gas attributable to the royalty share.[39] Had drainage not occurred and had H&P actually produced the natural gas, rather than sue ANR, the royalties could have qualified as royalty proceeds under the Act. Nevertheless, H&P never actually extracted and sold such natural gas, or delayed payment to royalty owners thereon. Consequently, the royalty owners are not entitled to prejudgment interest under the Act. Furthermore, because the royalty owners' recovery of damages from "uncompensated drainage" was not for a sum certain or a sum capable of being made certain by calculation or by reference to some fixed standards, the award of interest on such damages is not allowed under 23 O.S. 2011 §6.[40]

TRIAL COURT AFFIRMED.

REIF, C.J., COMBS, V.C.J., KAUGER, WINCHESTER, TAYLOR, COLBERT, JJ., concur.

WATT, J., concurs in part, dissents in part.

EDMONDSON, GURICH, JJ., disqualified.

FOOTNOTES

[1] Prior appeals consist of: Krug, et al. v. Helmerirch & Payne, Inc. No. 99,922 decided March 15, 2005, cert. denied September 20, 2005 [class certification]; Krug, et al. v. Helmerich & Payne, Inc. v. American Natural Gas Production Co., et al. No. 103,615 decided December 8, 2006 [third-party defendant summary judgment motion]; Krug, et al. v. Helmerich & Payne, Inc. v. May Petroleum, Inc., et al. No. 104,980 decided September 3, 2008 [third-party defendant motion to dismiss]; Krug, et al. v. Helmerich & Payne, Inc., No. 105,190 [review of certified interlocutory order denied November 26, 2007]; Helmerich & Payne, Inc., v. The Hon. P. Thomas Thornbrugh, No. 106,332 [original jurisdiction denied on October 20, 2008]; Helmerich & Payne, Inc. v. The Hon. P. Thomas Thornbrugh, No. 106,412 [original jurisdiction denied November 3, 2008]; Krug, et al. v. Helmerich & Payne, Inc., No. 106,845 [appeal of judgment of January 29, 2009 affirmed in part, reversed in part and remanded on December 10, 2013].

[2] 52 O.S. 2011 §570 .1 provides:

Sections 1 through 15 of this act shall be known and may be cited as the "Production Revenue Standards Act".

The Act, was passed in Senate Bill 168 which codified the Production Revenue Standards Act, 52 O.S. Supp. 1992 §§570.1-15 and the Natural Gas Marketing Share Act 52 O.S. Supp. 1992 §§581.1-10. The bill also renumbered previous statutes on the subject. For example 52 O.S. 1991 §540 became §570.10. Prior to 1992, the statutes only imposed affirmative obligations to pay proceeds and in 1992, Legislature substantially strengthened and expanded its scope and obligations by setting forth time restraints and penalties. Section 540 was originally enacted in 1980 for the purpose of limiting the amount of time during which royalty payments and working interest payments can be withheld by the first purchaser following the first sale of production on a new well. See, 1981 OK AG 6. It has come to be known as the "Sweetheart Gas Bill." Maxwell v. Samson Resources Co., 1993 OK 23, ¶14, 848 P.2d 1166. References in this opinion are to the current statutory decennial 2011, unless an older provision is controlling, differs significantly, and is otherwise noted.

[3] Title 23 O.S. 2011 §6 provides:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

[4] The trial court also reserved for future determination the amount of attorneys' fees and expenses to which Plaintiffs may be entitled on the basis of Defendant's denial of Request for Admission No. 3 of Plaintiff Ruth Eubanks' First Set of Interrogatories, Requests for Admission and Request for Production of Documents as determined in the Court's December 1, 2009, Order, and the amount of statutory costs to which Plaintiffs may be entitled pursuant to 12 O.S. 2011 §928. This Court determined on September 29, 2014, that the appeal could proceed when we denied the appellee's motion to dismiss.

[5] The order was filed on September 29, 2008, and it appears in the record on pages 251-52. It provides in pertinent part:

The Court, after hearing argument on August 19, 2008, and considering the relevant briefing and evidence submitted, issued the following orders:

. . .
Second: H&P's Motion for Legal Determination that Plaintiffs Are Not Entitled to Prejudgment Interest on Their Uncompensated Drainage Claim is GRANTED. . . .

[6] Tibbetts v. Sight 'n Sound Appliance Centers, Inc., 2003 OK 72, ¶10, 77 P.3d 1042; Walters v. J.C. Penney Co., Inc., 2003 OK 100, ¶6, 82 P.3d 582; Smedsrud v. Powell, 2002 OK 87, ¶13, 61 P.3d 891.

[7] Walters v. J.C. Penney Co., Inc., see note 6, supra; Smedsrud v. Powell, see note 6, supra; Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶22, 987 P.2d 1185.

[8] Been v. O.K. Industries, Inc., 495 F.3d 1217, 1224 (10th Cir. 2007); Avitia v. Metro Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995).

[9] Been v. O.K. Industries, Inc., see note 8, supra; Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 823 (10th Cir. 2007). See also Miller Dollarhide, P.C. v. Tal, 2007 OK 58, ¶¶13-15, 174 P.3d 559; Tibbetts v. Sight 'n Sound Appliance Centers, Inc., see note 6, supra at ¶16 (Law of case will not be applied if the prior ruling was palpably erroneous and would result in a gross or manifest injustice.].

[10] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, ¶5, 901 P.2d 800; McSorley v. Hertz Corp., 1994 OK 120, ¶6, 885 P.2d 1343; Smicklas v. Spitz, 1992 OK 145, ¶8, 846 P.2d 362.

[11] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, see note 10, supra; McSorley v. Hertz Corp, see note 10, supra; Oglesby v. Liberty Mut. Ins. Co., 1992 OK 61, ¶8, 832 P.2d 834.

[12] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, see note 10, supra; Haney v. State, 1993 OK 41, ¶5, 850 P.2d 1087; Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n, 1992 OK 153, ¶8, 842 P.2d 750.

[13] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, see note 10, supra; McSorley v. Hertz Corp, see note 10, supra; Macy v. Freeman, 1991 OK 59, ¶8, 814 P.2d 147.

[14] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, see note 10, supra; Oglesby v. Liberty Mut. Ins. Co., see note 11, supra; Fuller v. Odom, 1987 OK 64, ¶4, 731 P.2d 449.

[15] Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, see note 10, supra; Anson Corp. v. Hill, 1992 OK 138, ¶10, 841 P.2d 583; Oglesby v. Liberty Mut. Ins. Co., see note 11, supra.

[16] Title 52 O.S. 2011 §§570.0-570.15.

[17] Title 52 O.S. 2011 §570.3, Applicability of Act provides:

The Production Revenue Standards Act shall apply to all owners and shall apply to all producing wells, regardless of the date pooled, drilled or of the date of the underlying leases; provided, however, that Sections 4, 5, 6, 7 and 8 of this act shall not apply to wells in common sources of supply under unitized management pursuant to Section 287.1 of Title 52 of the Oklahoma Statutes or where royalty remittance is otherwise provided by written agreement among all owners in a well.

[18] Title 52 O.S. 2011 §570.4 provides:

A. In each month, each royalty interest owner shall share in all proceeds derived from the sale of gas production from a well to the extent of such owner's royalty interest in that well without regard to the identity of the producing owners during that period.

B. Each producing owner shall pay or cause to be paid to the operator the royalty share of its gas sales proceeds, valued according to such producing owner's lease terms or Corporation Commission forced pooling order, from all gas produced from the well by such owner during any month. The operator shall thereupon pay or cause to be paid such royalty proceeds to each royalty interest owner in the well in accordance with the proportionate royalty share owned by each royalty interest owner. The payment of such proceeds shall be accompanied by the information set out in Section 12 of this act.

C. The operator shall act solely in a ministerial capacity when performing functions on behalf of others pursuant to this act. The operator shall have discharged its duties to pay royalty proceeds under this act when it remits to the royalty interest owner such royalty proceeds that the operator has received from an owner pursuant to this act. In the absence of a division order signed by a royalty interest owner, an operator in distributing or causing to be distributed the royalty proceeds on gas production to that royalty interest owner shall be entitled to rely on royalty ownership and remittance information provided by the working interest owner burdened by such royalty interest. Working interest owners shall be solely liable for mispayments caused by their errors in or omissions of royalty ownership and remittance information on the royalty interests burdening them. When collecting and disbursing royalty funds and reporting pursuant to Section 12 of this act, the operator shall be entitled to rely on information provided to it by or on behalf of another producing owner.

D. As an alternative to the royalty disbursement procedure set forth in subsection B of this section, a producing owner shall have the right to pay or cause to be paid the royalty share of its gas sales from gas produced by such owner during any month directly to all royalty interest owners according to their proportionate royalty shares in such well, contingent upon the following:

1. Such producing owner shall be solely liable for all errors in and omissions of payment that it makes of royalty proceeds;

2. Such producing owner shall make written report to the operator within thirty (30) days of the date of such payment of all information relating to such payments, including the information specified by Section 12 of this act;

3. Such producing owner shall give to the operator not less than sixty (60) days' written notice prior to initiating or terminating this alternate royalty disbursement procedure; provided, however, any owner terminating this alternate royalty disbursement procedure may not reinitiate such procedure for twelve (12) months from the effective date of such termination;

4. Such producing owner shall solely bear all additional costs incurred by the operator or itself because of its initiation, utilization or termination of this alternative royalty payment procedure; and

5. Such producing owner shall provide or cause to be provided to the royalty interest owners for each month such producing owner's proportionate production interest, and the information required under Section 12 of this act.

The Act also delineates certain accounting functions and the rights and duties tied to such functions. 52 O.S. 2011 §570.5.

[19] Title 52 O.S. 2011 §570.2(8) provides:

8. "Royalty proceeds" means the share of proceeds or other revenue derived from or attributable to any production of oil and gas attributable to the royalty share, but shall not include payments of bonus, delay rentals, shut-in royalties or any additional royalty payable to the Commissioners of the Land Office or other governmental entity, pursuant to and valued according to the terms of its oil and gas lease, which is calculated separately from the royalty portion of actual proceeds from the sale of oil or gas;

[20] 52 O.S. 2011 §570.10 provides in pertinent part:

. . .B. Except as otherwise provided in this section:

1. Proceeds from the sale of oil or gas production from an oil or gas well shall be paid to persons legally entitled thereto:

a. commencing not later than six (6) months after the date of first sale, and

b. thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold.

2. Notwithstanding paragraph 1 above, royalty proceeds from the sale of gas production from an oil or gas well remitted to the operator pursuant to subsection B of Section 570.4 of this title shall be paid to persons legally entitled thereto:

a. commencing not later than six (6) months after the date of first sale, and

b. thereafter not later than the last day of the third succeeding month after the end of the month within which such production is sold; provided, however, when proceeds are received by the operator in its capacity as a producing owner, the operator may pay the royalty share of such proceeds to the royalty interest owners legally entitled thereto at the same time that it pays the royalty proceeds received from other producing owners for the same production month, but not later than the last day of the third succeeding month after the end of the month within which such production was sold.
. . .

4. Where royalty proceeds are paid incorrectly as a result of an error or omission, the party whose error or omission caused the incorrect royalty payments shall be liable for the additional royalty proceeds on such production and all resulting costs or damages incurred by the party making the incorrect payment.

D. 1. Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.

2. a. Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of six percent (6%) per annum to be compounded annually, calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable. Marketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association. . . .

[21] Title 52 O.S. 270.14 provides:

A. The district courts within this state shall have the sole and exclusive jurisdiction to determine the entitlement of any owner in a well to:

1. Its share of proceeds from production; or

2. Damages, interest, court costs, attorneys' fees or allowable litigation expenses incurred as a result of the violation of this act.

B. Any rulemaking power granted to the Corporation Commission by the Production Revenue Standards Act shall neither preclude nor impair the right of any owner to obtain through the district courts remedies available under existing law or additional remedies herein granted to any owner injured in business or property by reason of any action in violation of the provisions of the Production Revenue Standards Act.

C. Any owner injured in business or property by reason of any action in violation of the provisions of the Production Revenue Standards Act shall have the right to:

1. Recover actual damages so sustained; and

2. Obtain specific performance where equitable. The prevailing party in any court proceeding brought pursuant to the Production Revenue Standards Act shall be entitled to recover the costs of the suit, including but not limited to reasonable attorney and expert witness fees.

D. For purposes of the Production Revenue Standards Act, the statute of limitations on actions brought pursuant to the provisions of the Production Revenue Standards Act shall be five (5) years from the date the cause of action shall have accrued, provided however, nothing shall create, limit or expand any statute of limitations applicable to production occurring prior to September 1, 1992.

[22] Title 52 O.S. 2011 §570.2(8), see note 19, supra.

[23] Later, in Maxwell v. Samson Resources Co., see note 2, supra we also said that "[t]he purpose of the bill, as stated in §541, is to protect the rights and correlative rights of all interest owners of natural gas wells, affording each the opportunity to extract and sell their proportionate share of gas."

[24] Purcell v. Sante Fe Minerals, Inc., 1998 OK 45, ¶18, 961 P.2d 188. Purcell involved a royalty owner who sought underpaid royalties. The subject of the Act's prejudgment interest provision was also addressed in Fleet v. Sanguine, Ltd., 1993 OK 76, ¶11, 854 P.2d 892, wherein the Court described such interest as not merely compensation for the use of money belonging to another, but, rather, interest as a penalty to compel compliance with the Act. However, the Legislature subsequently removed the "penalty" language from the Act and we recognized that the change in Purcell, supra.

[25] See discussion note 2, supra.

[26] Withrow v. Red Eagle Oil Co., 1988 OK 16, ¶8, 755 P.2d 622; West Virginia v. United States, 479 U.S. 305, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 fn.2 (1987).

[27] May-Li Barki v. Liberty Bank and Trust Co., 1999 OK 87, ¶4, fn. 15, 20 P.3d 135; Fleet v. Sanguine, 1993 OK 76, ¶11, 854 P.2d 892; Huff v. State, 1988 OK 118, ¶11, 764 P.2d 183.

[28] Heiman v. Atlantic Richfield Co., 1995 OK 19, ¶14, 8901 P.2d 1252; Harrell v. Sampson Resources Co., 1988 OK 69, ¶37, 980 P.2d 99; Withrow v. Red Eagle Oil Co., see note 26, supra; Sisney v. Smalley, 1984 OK 70, ¶18, 755 P.2d 622.

[29] Withrow v. Red Eagle Oil Co., see note 26, supra;

[30] Withrow v. Red Eagle Oil Co., see note 26, supra; Sandpiper North Apartments v. American Nat. Bank, 1984 OK 13, ¶31, 680 P.2d 983.

[31] Black's Law Dictionary (10th Ed. 2014). Liquidated damages is defined as:

An amount contractually stimulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches. If the parties to a contract have properly agreed on liquidated damages, the sum fixed is the measure of damages for a breach, whether it exceeds or falls short of the actual damages. Also termed stimulated damages; estimated damages.

[32] Black's Law Dictionary (10th Ed. 2014). Unliquidated damages is defined as:

Damages that cannot be determined by a fixed formula and must be established by a judge or jury.

[33] Harrell v. Sampson Resources Co., see note 28, supra at ¶37.

[34] Withrow v. Red Eagle Oil Co., see note 26, supra at ¶12; Sisney v. Smalley, see note 28, supra at ¶17.

[35] Title 23 O.S. 2011 §6, see note 3, supra.

[36] Tibbetts v. Sight 'n Sound Appliance Centers, Inc., see note 6, supra; Walters v. J.C. Penney Co., Inc., see note 6 supra; Smedsrud v. Powell, see note 6, supra.

[37] Walters v. J.C. Penney Co., Inc., see note 6, supra; Smedsrud v. Powell, see note 6, supra; Patel v. OMH Medical Center, Inc., see note 7, supra.

[38] Been v. O.K. Industries, Inc., see note 8, supra; Prairie Band Potawatomi Nation v. Wagnon, see note 9, supra; See also Miller Dollarhide, P.C. v. Tal, note 9, supra; Tibbetts v. Sight 'n Sound Appliance Centers, Inc., see note 6, supra at ¶16.

[39] Title 52 O.S. 2011 §570.2(8) see note 19, supra.

[40] Title 23 O.S. 2011 §6, see note 3, supra.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 1981 OK AG 6, Question Submitted by: The Honorable Marvin York, President Pro Tempore, Oklahoma State Senate
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 34, 725 P.2d 278, 57 OBJ 1485, Seal v. Corporation Com'n
Discussed
 1987 OK 64, 741 P.2d 449, 58 OBJ 2057, Fuller v. Odom
Cited
 1988 OK 16, 755 P.2d 622, 59 OBJ 531, Withrow v. Red Eagle Oil Co.
Discussed at Length
 1988 OK 69, 757 P.2d 833, 59 OBJ 1637, Humphrey v. Denney
Cited
 1988 OK 118, 764 P.2d 183, 59 OBJ 2931, Huff v. State
Discussed
 1989 OK 168, 789 P.2d 1272, 60 OBJ 2358, Hull v. Sun Refining and Marketing Co.
Discussed
 1991 OK 59, 814 P.2d 147, 62 OBJ 2013, State ex rel. Macy v. Freeman
Discussed
 1992 OK 61, 832 P.2d 834, 63 OBJ 1368, Oglesby v. Liberty Mut. Ins. Co.
Discussed
 1992 OK 100, 854 P.2d 880, 63 OBJ 2023, Wood v. TXO Production Corp.
Cited
 1992 OK 138, 841 P.2d 583, 63 OBJ 2917, Anson Corp. v. Hill
Discussed
 1992 OK 145, 846 P.2d 362, 63 OBJ 3023, Smicklas v. Spitz
Discussed
 1992 OK 153, 842 P.2d 750, 63 OBJ 3422, Public Service Co. of Oklahoma v. State ex rel. Corp. Com'n
Discussed
 1993 OK 23, 848 P.2d 1166, 64 OBJ 820, Maxwell v. Samson Resources Co.
Discussed
 1993 OK 41, 850 P.2d 1087, 64 OBJ 1068, Haney v. State
Discussed
 1993 OK 76, 854 P.2d 892, 64 OBJ 1847, Fleet v. Sanguine, Ltd.
Discussed at Length
 1994 OK 120, 885 P.2d 1343, 65 OBJ 3684, McSorley v. Hertz Corp.
Discussed
 1997 OK 74, 944 P.2d 292, 68 OBJ 2076, GOODALL v. TRIGG DRILLING COMPANY, INC.
Discussed
 1999 OK 87, 20 P.3d 135, 70 OBJ 3149, May-Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.
Discussed
 1964 OK 80, 391 P.2d 214, HAYS v. PHOENIX MUTUAL LIFE INSURANCE COMPANY
Cited
 1995 OK 19, 891 P.2d 1252, 66 OBJ 863, Heiman v. Atlantic Richfield Co.
Cited
 1995 OK 62, 901 P.2d 800, 66 OBJ 2037, Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed
 2002 OK 87, 61 P.3d 891, SMEDSRUD v. POWELL
Discussed
 2003 OK 72, 77 P.3d 1042, TIBBETTS v. SIGHT 'n SOUND APPLIANCE CENTERS, INC.
Discussed
 2003 OK 100, 82 P.3d 578, WALTERS v. J. C. PENNEY COMPANY, INC.
Cited
 2006 OK 27, 174 P.3d 559, MILLER DOLLARHIDE, P.C. v. TAL
Cited
 2007 OK 58, 163 P.3d 548, MILLER DOLLARHIDE, P.C. v. TAL
Cited
 1996 OK 93, 2 P.3d 320, 67 OBJ 2709, Roye Realty & Developing, Inc. v. Watson
Discussed
 2013 OK 104, 320 P.3d 1012, KRUG v. HELMERICH & PAYNE, INC.
Discussed at Length
 1998 OK 45, 961 P.2d 188, 69 OBJ 2127, PURCELL v. SANTE FE MINERALS, INC.
Discussed
 1998 OK 69, 980 P.2d 99, 69 OBJ 2493, Harrell v. Samson Resources Co.
Cited
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
 1944 OK 299, 152 P.2d 923, 194 Okla. 453, WALDEN v. POTTS
Discussed
 1984 OK 13, 680 P.2d 983, Sandpiper North Apartments, Ltd. v. American Nat. Bank and Trust Co. of Shawnee
Discussed
 1984 OK 70, 690 P.2d 1048, Sisney v. Smalley
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 928, Costs Allowed to Plaintiff upon Judgment in His Favor in Actions for Recovery of Money or Property
Cited
Title 23. Damages
 Cite
Name
Level

 23 O.S. 6, Right to Recover Interest upon Damages
Discussed at Length
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 570.1, Short Title
Cited
 52 O.S. 570.2, Definitions
Discussed at Length
 52 O.S. 570.3, Applicability of Act
Cited
 52 O.S. 570.4, Proceed Sharing - Operator Duties - Alternative to Royalty Disbursement
Cited
 52 O.S. 570.5, Designation of Person to Perform Certain Royalty Accounting and Remittance Functions - Person's Rights and Duties
Cited
 52 O.S. 570.10, Proceeds from Sale of Production
Cited
 52 O.S. 581.1, Short Title
Cited